UNITED PARCEL SERVICE, INC. *v.* MITCHELL ET AL.

No. 80–169.  Argued February 24, 1981—Decided April 20, 1981

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 64. STEWART, J., filed an opinion concurring in the judgment, *post*, p. 65. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post*, p. 71.

*Bernard G. Segal* argued the cause for petitioner. With him on the briefs was *James D. Crawford*. *Albert S. Parsonnet* filed a brief for Local 177, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, respondent under this Court's Rule 19.6, in support of petitioner.

*David Jaroslawicz* argued the cause for respondent Mitchell. With him on the brief was *Ira Leitel*.*

---

*Briefs of *amici curiae* urging reversal were filed by *J. Albert Woll, Laurence Gold, Michael H. Gottesman,* and *Robert M. Weinberg* for the American Federation of Labor and Congress of Industrial Organizations;

58

JUSTICE REHNQUIST delivered the opinion of the Court.

We are called upon in this case to determine which state statute of limitations period should be borrowed and applied to an employee's action against his employer under § 301 (a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U. S. C. § 185 (a), and *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554 (1976).

I

Petitioner United Parcel Service, Inc. (UPS), employed respondent Mitchell (respondent). as a car washer at its facility on Staten Island, N. Y. On January 13, 1977, respondent was discharged for dishonest acts, including falsifying his timecards and claiming payment for hours which he did not work. Respondent denied the charges against him and requested his union, Department Store and Wholesale Drivers, Warehousemen and Helpers, Local Union No. 177 (the Union), to file a grievance on his behalf contesting the discharge. UPS and the Union were parties to a collective-bargaining agreement which provided a grievance and arbitration procedure for the resolution of disputes covered by the agreement. App. 57–67. Pursuant to the agreement respondent's grievance was submitted to a panel of the Atlantic Area Parcel Grievance Committee, composed of three union and three company representatives (the Joint Panel). Cf. *Hines* v. *Anchor Motor Freight, Inc., supra*, at 557, n. 2. The Joint Panel conducted a hearing, at which respondent was represented by the Union, and on February 16, 1977, it announced its decision that the discharge be upheld. App. 103–104. Under the collective-bargaining agreement this decision was "binding on all parties." *Id.*, at 66; see *id.*, at 103.

Seventeen months later, on July 20, 1978, respondent filed a complaint in the United States District Court for the East-

and by *David Previant* for the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

ern District of New York against the Union and UPS under § 301 (a) of the Labor Management Relations Act, 29 U. S. C. § 185 (a). See *Hines* v. *Anchor Motor Freight, Inc., supra.* He alleged that the Union had breached its duty of fair representation and that UPS discharged him not for the stated reasons, which it knew to be false, but to achieve savings by replacing full-time employees with part-time employees. App. 7–13. Both UPS and the Union moved for summary judgment on the ground that the action was barred by New York's 90-day statute of limitations for actions to vacate arbitration awards. Section 7511 (a) of the N. Y. Civ. Prac. Law (McKinney 1963) provides that "[a]n application to vacate or modify an [arbitration] award may be made by a party within ninety days after its delivery to him."

The District Court granted summary judgment in favor of UPS and the Union, ruling that respondent's action was properly characterized as one to vacate the arbitration award entered against him. The court reasoned: "The relief sought was expressly denied in an arbitration award issued as a result of a full-scale arbitration proceeding. The effect of any grant of the relief sought . . . would be to vacate the determination of the arbitrators." App. 129. Respondent appealed and the Court of Appeals for the Second Circuit reversed. 624 F. 2d 394 (1980). That court held that the District Court should have applied New York's 6-year limitations period for actions alleging breach of contract, N. Y. Civ. Prac. Law § 213 (2) (McKinney 1972). It reasoned that respondent's action was analogous to a breach-of-contract action because the issues were whether the collective-bargaining agreement had been breached and whether the Union contributed to that breach by failure to discharge its duty of fair representation. The court further reasoned that a 6-year limitations period "provides for relatively rapid disposition of labor disputes without undermining an employee's ability to vindicate his rights through § 301 actions." 624 F. 2d, at 397–398.

We granted UPS' petition for certiorari. 449 U. S. 898 (1980).[1]

## II

Congress has not enacted a statute of limitations governing actions brought pursuant to § 301 of the LMRA. As this Court pointed out in *Auto Workers* v. *Hoosier Cardinal Corp.,* 383 U. S. 696, 704–705 (1966), "the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." [2] Our present task is to determine which limitations period is "the most appropriate one provided by state law." *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 462 (1975). This depends upon an examination of the nature of the fed-

---

[1] A direct conflict in the Circuits developed when the Third Circuit, confronted with the present question, borrowed the 3-month period contained in Pennsylvania's arbitration statute, reversing a District Court decision borrowing the State's 6-year period for actions upon a contract. *Liotta* v. *National Forge Co.,* 629 F. 2d 903 (1980), cert. pending, No. 80–890.

[2] *Amicus* the American Federation of Labor and Congress of Industrial Organizations has filed a brief arguing that, in cases such as the present, courts should apply the 6-month limitations period found in § 10 (b) of the National Labor Relations Act, 29 U. S. C. § 160 (b). The AFL–CIO distinguishes the above-quoted language from *Hoosier Cardinal* on the ground that *Hoosier Cardinal* involved a § 301 action by a union against an employer, while actions brought by employees against both their union and employer pursuant to our decisions in *Vaca* v. *Sipes,* 386 U. S. 171 (1967), and *Hines* v. *Anchor Motor Freight, Inc.,* 424 U. S. 554 (1976), are hybrid § 301 breach-of-duty actions, the union's duty being implied from the NLRA. We decline to consider this argument since it was not raised by either of the parties here or below. See *Bell* v. *Wolfish,* 441 U. S. 520, 532, n. 13 (1979); *Knetsch* v. *United States,* 364 U. S. 361, 370 (1960). Our grant of certiorari was to consider *which* state limitations period should be borrowed, not whether such borrowing was appropriate. See Pet. for Cert. i. The parties have considered the question as being limited to which state limitations period to borrow. See, *e. g.,* Brief for Petitioner 8; Brief for Respondent 11. Since respondent filed his complaint beyond the 6-month period, the same result would obtain in this case were we to adopt the AFL–CIO's position.

eral claim and the federal policies involved.    See *Hoosier Cardinal, supra,* at 706–707.

Although respondent did not style his suit as one to vacate the award of the Joint Panel, if he is successful the suit will have that direct effect.    Respondent raises in his § 301 action the same claim that was raised before the Joint Panel— that he was discharged in violation of the collective-bargaining agreement.    He seeks the same relief he sought before the Joint Panel—reinstatement with full backpay.    In sum, "it is clear that [he] was dissatisfied with and simply seeks to upset the arbitrator's decision that the company did not wrongfully discharge him."    *Liotta* v. *National Forge Co.,* 629 F. 2d 903, 905–906 (CA3 1980), cert. pending, No. 80–890.[3]

The Court of Appeals purported to rely on this Court's decision in *Hines* v. *Anchor Motor Freight, Inc.,* but that decision strongly supports borrowing the limitations period for actions to vacate arbitration awards.    As *Hines* makes clear, an employee may go behind a final and binding award under a collective-bargaining agreement and seek relief against his employer and union only when he demonstrates that his union's breach of its duty "seriously undermine[d] the integrity of the arbitral process."    424 U. S., at 567.    *Hines* rejected the suggestion that "erroneous arbitration decisions must stand" in the face of the union's breach of its duty, *id.,* at 571, suggesting that the suits it sanctioned are aptly characterized as ones to vacate such arbitration decisions.    Indeed the present

---

[3] The Court of Appeals declined to borrow the limitations period for actions to vacate an arbitration award in part because of its view that discharged employees could not institute such actions under New York law, see *In re Soto,* 7 N. Y. 2d 397, 165 N. E. 2d 855 (1960).    624 F. 2d 394, 398 (1980).    The fact that an employee could not bring a direct suit to vacate an arbitration award, however, does not mean that his § 301 claim, which if successful would have the same effect, is not "closely analogous" to such an action.    See *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454, 464 (1975).

writer, though in dissent on the merits in *Hines,* characterized the action as one to "vacate an . . . arbitration award." *Id.,* at 575. See also *Humphrey* v. *Moore,* 375 U. S. 335, 336 (1964) (issue characterized as whether to enjoin implementation of decision of joint panel).

It is true that respondent's underlying claim against his employer is based on the collective-bargaining agreement, a contract. It is not enough, however, for an employee such as respondent to prove that he was discharged in violation of the collective-bargaining agreement. "To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. . . . The grievance processes cannot be expected to be error-free." *Hines,* 424 U. S., at 570–571. Thus respondent's characterization of his action against the employer as one for "breach of contract" ignores the significance of the fact that it was brought in the District Court pursuant to § 301 (a) of the LMRA and that the indispensable predicate for such an action is not a showing under traditional contract law that the discharge was a breach of the collective-bargaining agreement, but instead a demonstration that the Union breached its duty of fair representation. Since the conclusion of the Joint Panel was, under the collective-bargaining agreement, "binding on all parties," respondent was required in some way to show that the Union's duty to represent him fairly at the arbitration had been breached before he was entitled to reach the merits of his contract claim. This, in our view, makes the suit more analogous to an action to vacate an arbitration award than to a straight contract action.[4]

---

[4] Respondent suggests *Hines* actions might also be characterized as actions upon a statute, personal injury actions, or malpractice actions, all governed by a 3-year limitations period in New York, N. Y. Civ. Prac. Law §§ 214 (2), 214 (5), 214 (6) (McKinney 1972). All of these characterizations suffer from the same flaw as the effort to characterize the

We think that the unfair representation claim made by an employee against his union, even though his employer may ultimately be called upon to respond in damages for it if he is successful, is more a creature of "labor law" as it has developed since the enactment of § 301 than it is of general contract law. We said in *Hoosier Cardinal* that one of the leading federal policies in this area is the "relatively rapid disposition of labor disputes." 383 U. S., at 707. Cf. 29 U. S. C. § 160 (b) (6-month period under NLRA). This policy was one of the reasons the Court in *Hoosier Cardinal* chose the generally shorter period for actions based on an oral contract rather than that for actions upon a written contract, 383 U. S., at 707, and similar analysis supports our adoption of the shorter period for actions to vacate an arbitration award in this case.[5]

It is important to bear in mind the observations made in the *Steelworkers Trilogy* that "the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. . . . The processing . . . machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." *Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U. S. 574, 581 (1960). Although the present case involves a fairly mundane

action as one for breach of contract: they overlook the fact that an arbitration award stands between the employee and any relief which may be awarded against the company.

[5] New York is typical in providing a relatively short limitations period for actions to vacate arbitration awards. Of 42 States with specific limitations periods for such actions, 28 have a period of 90 days, 9 have shorter periods, 2 longer, and 3 States have periods based on the term of court. See App. to Pet. for Cert. A18–A19. The Federal Arbitration Act, 9 U. S. C. § 12, provides a limitations period of three months.

The particular choice made in *Hoosier Cardinal* to borrow the limitations period for oral contracts is not binding in this case, not only because the issue in *Hoosier Cardinal* was between a 6-year period for oral contracts and a 20-year period for written contracts, but also because the claim in *Hoosier Cardinal* was not one to overturn an arbitration award.

and discrete wrongful-discharge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. See, *e. g., Humphrey* v. *Moore, supra* (seniority rights of all employees). This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later.

Obviously, if New York had adopted a specific 6-year statute of limitations for employee challenges to awards of a joint panel or similar body, we would be bound to apply that statute under the reasoning of *Hoosier Cardinal*. But in cases such as this, where generally state limitations periods were enacted prior to the enactment of § 301 by Congress in 1947, we are necessarily committed by prior decisional law to choosing among statutes of limitations none of which fit hand in glove with an action under § 301 (a) of the LMRA. Given the choices present here, and the undesirability of the results of the grievance and arbitral process being suspended in limbo for long periods, we think the District Court was correct when it chose the 90-day period imposed by New York for the bringing of an action to vacate an arbitration award.

Accordingly, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE BLACKMUN, concurring.

I join the Court's opinion because I am persuaded that the Court has made the correct choice between the two state-law alternatives presented by the parties. As the Court observes, the applicability of § 10 (b) of the National Labor Relations Act, 29 U. S. C. § 160 (b), was never pressed by

either party, and was not considered by the Court of Appeals. Although I find much that is persuasive in JUSTICE STEWART's analysis, resolution of the § 10 (b) question properly should await the development of a full adversarial record.

JUSTICE STEWART, concurring in the judgment.

The Court believes itself obligated by *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, to determine the applicable statute of limitations in this case "as a matter of federal law, by reference to the appropriate state statute of limitations." [1] I do not believe, however, that we are so constrained by *Hoosier*. Instead of deciding which of two almost equally relevant state limitations periods applies to the respondent employee's claims, I would impose the limitations period of § 10 (b) of the National Labor Relations Act (NLRA), 29 U. S. C. § 160 (b).

A

*Hoosier* involved a straightforward breach-of-contract damages suit brought by a union against an employer under § 301 of the Labor Management Relations Act (LMRA). As Congress had not provided a limitations period for § 301 suits, the Court concluded that a state statute of limitations should apply. But the Court was careful to note that it was not deciding the appropriate time limits for all suits brought under § 301:

"The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required

_____
[1] But see *ante*, at 60, n. 2.

to decide, and we indicate no view whatsoever on that question." 383 U. S., at 705, n. 7.

The Court also observed, in response to the claim that reliance on varying state limitations statutes was contrary to the national interest in uniformity in industrial relations, that the kind of contract dispute it had before it did not implicate "those consensual processes that federal labor law is chiefly designed to promote—*the formation of the . . . agreement and the private settlement of disputes under it.*" *Id.,* at 702 (emphasis added).

The case before us is quite unlike the one in *Hoosier.* It is a hybrid "§ 301 and breach of duty sui[t]," *Vaca* v. *Sipes,* 386 U. S. 171, 197, n. 18, brought by an employee against both his employer and his union in order to set aside a "final and binding" determination of a grievance, arrived at through the collectively bargained method of resolving the grievance. It is, therefore, a direct challenge to "the private settlement of disputes under [the collective-bargaining agreement]."

Moreover, unlike *Hoosier,* where the employee's complaint was rooted solely in § 301 of the LMRA, the respondent employee here has two claims, each with its own discrete jurisdictional base. The contract claim against the employer is based on § 301, but the duty of fair representation is derived from the NLRA.[2] Yet the two claims are inextricably inter-

---

[2] The Court has recognized on numerous occasions that "[t]he duty of fair representation is . . . implicit in the National Labor Relations Act." See, *e. g., Electrical Workers* v. *Foust,* 442 U. S. 42, 46, n. 8. The Court first recognized the statutory duty of fair representation in *Steele* v. *Louisville & Nashville R. Co.,* 323 U. S. 192, a case arising under the Railway Labor Act, but in a series of decisions beginning with *Ford Motor Co.* v. *Huffman,* 345 U. S. 330, the Court concluded that the duty of fair representation applies equally to the NLRA. The Court explained the derivation of the principle in *Hines* v. *Anchor Motor Freight, Inc.,* 424 U. S. 554, 563–564:

"Necessarily '[a] wide range of reasonableness must be allowed a statu-

dependent. "To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554, 570–571. Accordingly, a plaintiff must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer.

Thus, the suit in this case, unlike the one in *Hoosier*, cannot be likened to "an action for breach of contract cognizable at common law." 383 U. S., at 705, n. 7. Instead, it is an amalgam of § 301, which has no limitations period, and the NLRA. And, of course, the latter contains a limitations provision. Although § 10 (b) of the NLRA was designed to limit the initiation of unfair labor practice claims [3] in order

tory bargaining representative in serving the unit it represents . . . .' *Ford Motor Co.* v. *Huffman*, 345 U. S. 330, 338 (1953). The union's broad authority in negotiating and administering effective agreements is 'undoubted,' *Humphrey* v. *Moore*, 375 U. S. 335, 342 (1964), but it is not without limits. Because '[t]he collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit,' *Vaca* v. *Sipes*, 386 U. S. 171, 182 (1967), the controlling statutes have long been interpreted as imposing upon the bargaining agent a responsibility equal in scope to its authority, 'the responsibility and duty of fair representation.' *Humphrey* v. *Moore*, *supra*, at 342. The union as the statutory representative of the employees is 'subject always to complete good faith and honesty of purpose in the exercise of its discretion.' *Ford Motor Co.* v. *Huffman*, supra, at 338." That this duty of fair representation under the NLRA may be judicially enforced was made clear in *Vaca* v. *Sipes*, 386 U. S. 171.

[3] This Court has not decided whether all breaches of the duty of fair representation necessarily constitute unfair labor practices under §§ 8 (b) (1)(A) and (b)(2) of the NLRA. In *Miranda Fuel Co.*, 140 N. L. R. B. 181, the Board ruled that all violations of the duty of fair representation are unfair labor practices either under § 8 (b)(2) or under § 8 (b)(1)(A). In *Vaca* v. *Sipes*, *supra*, the Court found it unnecessary to decide whether *Miranda Fuel* was correctly decided, but simply "assume[d] for present

to safeguard the stability of collective-bargaining agreements, the policy behind it applies with equal force in this context.

## B

Congress enacted § 10 (b) of the NLRA to protect continuing collective-bargaining systems from delayed attack. The 6-month bar of § 10 (b) [4] is designed to strengthen and defend the "stability of bargaining relationships." *Machinists* v. *NLRB*, 362 U. S. 411, 425. The time limitation reflects

purposes" that the Board had been correct. 386 U. S., at 186. The three concurring Justices in *Vaca* v. *Sipes*, however, stated that "a complaint by an employee that the union has breached its duty of fair representation . . . is a charge of unfair labor practice." *Id.*, at 198. And a majority of the Courts of Appeals have concluded that breach of the fair representation duty is an unfair labor practice. See *Newport News Shipbuilding Co.* v. *NLRB*, 631 F. 2d 263 (CA4); *Abilene Sheet Metal, Inc.* v. *NLRB*, 619 F. 2d 332, 347 (CA5); *NLRB* v. *American Postal Workers Union*, 618 F. 2d 1249, 1254–1255 (CA8); *Kesner* v. *NLRB*, 532 F. 2d 1169, 1173–1174 (CA7); *Kling* v. *NLRB*, 503 F. 2d 1044 (CA9); *Truck Drivers* v. *NLRB*, 126 U. S. App. D. C. 360, 379 F. 2d 137; cf. *Denver Stereotypers* v. *NLRB*, 623 F. 2d 134, 136 (CA10). But see *NLRB* v. *Miranda Fuel Co.*, 326 F. 2d 172, 175–178 (CA2) (Judge Medina took the position that the Board had incorrectly held violation of the duty of fair representation to be an unfair labor practice; Judge Lumbard, concurring, did not reach that question; Judge Friendly dissented). Even if there are some breaches of the representation duty that are not unfair labor practices under the NLRA, § 10 (b) is, I believe, the proper source for determining when claims of breach of duty must be raised. For that limitations period is a clear indication of Congress' judgment of when claims of a very similar or identical character must be brought.

[4] Concededly, the terms of § 10 (b) are directed to the administrative procedures provided by Congress to resolve unfair labor practices. But the fact that Congress did not provide a limitations period for a judicially enforceable action later found implied in the NLRA is not comparable to a congressional failure to establish a time limitation for an action it expressly creates by statute. Cf. *Occidental Life Ins. Co.* v. *EEOC*, 432 U. S. 355, 367. In any case, it cannot reasonably be assumed here that congressional silence reflects an intent to apply state statutes of limitation for an action based in part on rights and obligations traceable to the NLRA.

the balance drawn by Congress, "the expositor of the national interest," *id.*, at 429, between the interests of employees in redressing grievances and "vindicati[ng] [their] statutory rights," *ibid.*, and the "interest in 'industrial peace which it is the overall purpose of the Act to secure.'" *Id.*, at 428 (quoting *NLRB* v. *Childs Co.*, 195 F. 2d 617, 621–622 (CA2) (L. Hand, concurring)).[5]

Of course, one aspect of the respondent employee's claim in this case is predicated on § 301 of the LMRA; if the plaintiff can establish his claim for breach of the duty of fair representation, he may then pursue his § 301 breach-of-contract claim. But here, unlike *Hoosier,* the latter action, like the breach-of-duty claim, is a challenge to a result reached in the contractual grievance resolution system. Accordingly, the policy of promoting stability in collective bargaining underlying the time bar of § 10 (b) is applicable to this aspect of the respondent employee's case as well.

In any event, the two elements of respondent employee's hybrid action cannot be disentangled: the duty of fair representation is "part and parcel of [the] § 301 [claim]." *Vaca* v. *Sipes,* 386 U. S., at 186. When the 6-month period of § 10 (b) has passed, the employee should no longer be able to challenge the alleged breach of duty by his union,[6] and as this is a precondition for maintaining the contract action, he should not be able to challenge the employer's action either.

Finally, even if it were appropriate to view the respondent employee's suit in this case as founded solely on § 301, the

---

[5] The charge by the employees in *Machinists* was against the formation of a collective-bargaining agreement. Here the complaint is with the agreement's administration. But § 8 (d) of the NLRA defines the collective bargaining required by the Act to include grievance procedures as a part of the continuing collective-bargaining process. See *NLRB* v. *Acme Industrial Co.*, 385 U. S. 432, 436; 29 U. S. C. § 158 (d).

[6] The Court held in *Machinists* v. *NLRB*, 362 U. S. 411, 422, that "a finding of violation which is inescapably grounded on events predating the limitations period is directly at odds with the purposes of the § 10 (b) [time limit]."

Court is not obliged to apply a state statute of limitations. As already noted, *Hoosier* contemplated that "other § 301 suits' different from the present one might call for application of other rules of timeliness." 383 U. S., at 705, n. 7. And the Court has indicated, in a more general context, that state limitations periods will not be applied when their employment would be inconsistent with national policy:

> "[T]he Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. . . . State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute." *Occidental Life Ins. Co.* v. *EEOC,* 432 U. S. 355, 367.

In § 10 (b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the "final and binding" determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates "those consensual processes that federal labor law is chiefly designed to promote—the formation of the . . . agreement and the private settlement of disputes under it." *Hoosier,* 383 U. S., at 702. Accordingly, "[t]he need for uniformity" among procedures followed for similar claims, *ibid.,*[7] as well as the clear congressional indi-

---

[7] The need for speedy and final resolution of labor disputes, preferably

cation of the proper balance between the interests at stake, counsels the adoption of § 10 (b) of the NLRA as the appropriate limitations period for lawsuits such as this.

## C

Because the respondent employee commenced his suit beyond the 6-month bar of § 10 (b) of the NLRA, I agree that the judgment of the Court of Appeals must be reversed.

JUSTICE STEVENS, concurring in part and dissenting in part.

In this action, the plaintiff-employee seeks a judicial remedy against his former employer for wrongful discharge, and against his union for breach of the duty of fair representation. The District Court granted summary judgment in favor of both defendants because of the employee's failure to file suit within what that court viewed as the appropriate period of limitations. The Court of Appeals reversed the District Court's judgment as to both claims and remanded for further proceedings. The employer alone sought further review in this Court. Therefore, at this stage of the litigation, the only question properly presented for our consideration is whether the Court of Appeals chose the most appropriate New York statute of limitations to govern the employee's claim against his former employer for wrongful discharge.[1] Although I agree for the most part with the

without recourse to the courts—identified by the Court today in support of its preference for the shorter of the possible state limitations periods, *ante,* at 63, 64—also supports adoption of the relatively short period of § 10 (b).

[1] The union did not petition for review of the Court of Appeals' decision, and the employer has not taken a position with respect to which statute of limitations governs the employee's claim against the union. Indeed, the employer has vigorously denied that this question is presented in this case:

"[T]he only question raised in the petition for certiorari is the statute of

Court's resolution of that question, I fear that its failure expressly to limit its reasoning to the narrow question presented in this case may suggest that today's decision also resolves the question whether the same statute of limitations governs the employee's claim against the union for breach of the duty of fair representation. That interpretation, although understandable in light of the broad language of the Court's opinion, would be inconsistent with the procedural posture of this case and, in addition, would be conceptually unsound.

I concur in the Court's conclusion that it is appropriate, for purposes of federal labor law, to characterize the employee's suit against his employer as an action to set aside an arbitration award. In the arbitration proceeding that took place prior to this litigation, the employer prevailed on the precise claim respondent raises against it in this judicial proceeding—that the discharge violated the collective-bargaining agreement. If the employee now were to prevail against the employer on this claim, the necessary effect of the resulting court order would be to undo the arbitration award. See *ante,* at 61. Accordingly, in upholding the employer's position, the Court properly emphasizes the importance of the finality and certainty of arbitration in the collective-bargaining context, and properly treats the adverse arbitration decision as a substantial obstacle to the employee's pursuit of judicial relief against his employer.

The employee's claim against his union for breach of the duty of fair representation, however, is of a far different character. Although this claim is closely related to the claim

---

limitations applicable to Mitchell's claim against his employer, UPS. *See* Liotta v. National Forge Co., 629 F. 2d 903 (3d Cir. 1980).

. . . . .

"The fact that Mitchell may have a claim against the Union does not affect the determination of which statute of limitations governs his claim against his employer. *See* Liotta v. National Forge Co., *supra,* 629 F. 2d at 905." Reply Brief for Petitioner 3, 4.

See also *Id.,* at 5–6.

against the employer, the two claims are nonetheless conceptually distinct.[2] The claim against the union may not, in my judgment, be characterized as an action to vacate an arbitration award. The arbitration proceeding did not, and indeed, could not,[3] resolve the employee's claim against the union. Although the union was a party to the arbitration, it acted only as the employee's representative; the Joint Panel did not address or resolve any dispute between the employee and the union. Therefore, with respect to the employee's action against the union, the finality and certainty of arbitration are not threatened by the prospect that the employee might prevail on his judicial claim. Because no arbitrator has decided the primary issue presented by this claim, no arbitration award need be undone, even if the employee ultimately prevails.[4]

---

[2] The claims are closely related because, to prevail against the employer, the employee must establish that the union breached its duty of fair representation and that the employer breached the collective-bargaining agreement; similarly, to prevail against the union, the employee must prove that the union breached its duty of fair representation and, if he wishes to recover loss-of-employment damages for which the union is responsible, that the employer breached the agreement. See n. 4, *infra.* Cf. *Czosek* v. *O'Mara,* 397 U. S. 25, 28–29. However, despite this close relationship, the two claims are not inseparable. Indeed, although the employee in this case chose to sue both the employer and the union, he was not required to do so; he was free to institute suit against either one as the sole defendant. See *Vaca* v. *Sipes,* 386 U. S. 171, 186–187.

[3] By its very nature, the employee's claim that the union breached its duty of fair representation cannot be resolved in an arbitration proceeding because it arises out of the conduct of that proceeding itself.

[4] While an arbitration decision favorable to the employer—for example, that the discharge did not breach the collective-bargaining agreement— would be of substantial significance in an employee's suit against his union, it would not necessarily be dispositive. The determination whether the employer breached the agreement may be highly relevant to the amount of damages caused by the union's alleged breach of duty, but it is not necessarily controlling with respect to the threshold question whether there was any breach of duty by the union at all. For example, if, solely for reasons of racial bias, a union processes a discharged employee's griev-

The employee's claim against his union is properly characterized, not as an action to vacate an arbitration award, but rather as a malpractice claim. There is no conceptual reason why that claim may not survive even if the employer is able to rely on the arbitration award as a conclusive determination of its obligations under the collective-bargaining agreement.[5] Thus, by analogy, a lawyer who negligently allows the statute of limitations to run on his client's valid claim may be liable to his client even though the original defendant no longer has any exposure. Cf. *Smart* v. *Ellis Trucking Co.*, 580 F. 2d 215, 218–219 (CA6 1978), cert. denied, 440 U. S. 958.

In this case, I agree with the Court that the statute of limitations applicable to respondent's claim against his former employer is the 90-day statute governing actions to vacate or

---

ance in bad faith, the union breaches its duty of fair representation. Cf. *Steele* v. *Louisville & Nashville R. Co.*, 323 U. S. 192. The fact that the underlying discharge may not have violated the collective-bargaining agreement does not necessarily absolve the union of liability for its breach, although it may limit the size of the employee's recovery against the union. Thus, while a court considering an employee's claim against a union will evaluate the validity of the employer's underlying conduct, that evaluation is not central to the resolution of the duty-of-fair-representation claim.

[5] In *Liotta* v. *National Forge Co.*, 629 F. 2d 903 (CA3 1980), cert. pending, No. 80–890, the Court of Appeals concluded that the Pennsylvania statute of limitations governing actions to vacate arbitration awards should apply to an employee's § 301 action against his employer for wrongful discharge. However, in *Liotta* the employee had filed suit only against his employer, and not against his union. The Court of Appeals suggested that this fact was of some significance in determining which statute of limitations to apply:

"[T]he fact that Liotta alleges that the arbitration award is invalid due to the Union's breach of its duty of fair representation does not change the limitations period because the suit here is against the Company and not the Union. Thus, it is clear that Liotta was dissatisfied with and simply seeks to upset the arbitrator's decision that the Company did not wrongfully discharge him." 629 F. 2d, at 905–906.

modify arbitration awards in New York.[6]   It surely does not follow, however, that that statute is applicable to the claim against the union for breach of its duty of fair representation.[7]   Because the union did not seek review of the judgment of the Court of Appeals, it is not appropriate to decide what period of limitations should be applied to the employee's claim against it.   It is, however, noteworthy that JUSTICE STEWART's proposal that we strain to conclude that Congress intended that § 10 (b) of the National Labor Relations Act, 29 U. S. C. § 160 (b),[8] be applied to causes of action that this

---

[6] N. Y. Civ. Prac. Law § 7511 (a) (McKinney 1963), quoted *ante,* at 59. I do not address any question concerning the possible tolling of that period, because no such issue is presented in this case.

[7] Under the rationale of *Auto Workers* v. *Hoosier Cardinal Corp.,* 383 U. S. 696, 704–705, arguably the proper statute of limitations to apply to such a claim would be N. Y. Civ. Prac. Law § 214 (6) (McKinney 1972), which governs claims for nonmedical malpractice.   Because the question of the appropriate statute of limitations to apply to the employee's claim against his union is not properly presented in this case, I express no definite opinion on the point.   I note, however, that the Court dismisses the suggestion that this action may be characterized as a malpractice action with the observation that this characterization "overlook[s] the fact that an arbitration award stands between the employee and any relief which may be awarded against *the company." Ante,* at 63, n. 4 (emphasis supplied).   Because no arbitration award stands between the employee and any relief which may be awarded against the union, this observation is inapplicable to the claim against the union.

[8] Section 10 (b) of the National Labor Relations Act provides:

"Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the [National Labor Relations] Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the

76

Court had not yet divined when § 10 (b) was enacted,[9] cf. *Watt* v. *Alaska, post,* p. 276 (STEWART, J., dissenting), rests on a rationale that might apply to a § 301 claim against the union, but which is wholly inapplicable to the claim against the employer, because the employer is not accused of any unfair labor practice.

In sum, I concur in the Court's judgment insofar as it pertains to the employee's action against his employer.

---

armed forces, in which event the six-month period shall be computed from the day of his discharge. Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of title 28." 29 U. S. C. § 160 (b).

The plain language of this statute indicates that it is directed solely to the administrative procedure established by Congress in the National Labor Relations Act for the resolution of unfair labor practice charges arising under, and processed in accordance with, that Act. Nothing in the statutory language suggests that Congress intended that this 6-month limitations period be applied in any other context.

[9] The National Labor Relations Act was enacted in 1935. 49 Stat. 449. Although § 10 (b) was a part of the Act at that time, in its original form it did not contain a period of limitations. 49 Stat. 453–454. The 6-month limitations period upon which JUSTICE STEWART relies was added to § 10 (b) in 1947. 61 Stat. 146. Six years later, the Court decided the first in a series of cases recognizing that the National Labor Relations Act imposes a duty of fair representation upon unions. See *Ford Motor Co.* v. *Huffman,* 345 U. S. 330. In 1967, in *Vaca* v. *Sipes,* 386 U. S. 171, the Court clearly held that this duty may be judicially enforced. See generally *Hines* v. *Anchor Motor Freight, Inc.,* 424 U. S. 554, 563–567.