Robert WALSH, Plaintiff,

v.

BOSS LINCO LINES, INC., International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and Local 641, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Defendants.

Civ. No. 78–791.

United States District Court,
D. New Jersey.

Nov. 18, 1981.

James Lipson, Hudson County Legal Services, Jersey City, N. J., for plaintiff.

Martin J. Brenner, Livingston, N. J., for Boss Linco Lines.

Donato J. Battista, Jersey City, N. J., for Intern. Broth., etc., and Local 641, etc.

OPINION

BIUNNO, District Judge.

Plaintiff filed suit against his employer, Boss Linco Lines and his union, International Brotherhood of Teamsters and his local, Local 641, on April 14, 1978, approximately two years after the arbitrator upheld termination of his employment.

Plaintiff claims the suit was timely filed, applying the six-year statute of limitations appropriate to contract actions N.J.S.A. 2A:14–1. Defendants claim the suit is more appropriately characterized as a review of the arbitration award and should have been filed within the ninety-day limitations set by N.J.S.A. 2A:24–7.

This question was recently addressed by both the Third Circuit and the Supreme Court. In *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the court held that a suit under § 301(a) based on the breach of the duty of fair representation is more a creature of "labor law" than contract law:

> "Thus respondent's characterization of his action against the employer as one for 'breach of contract' ignores the significance of the fact that it was brought in the District Court pursuant to § 301(a) of the LMRA and that the indispensable predicate for such an action is not a showing under traditional contract law that the discharge was a breach of the collective-bargaining agreement, but in-

stead a demonstration that the union breached its duty of fair representation. Since the conclusion of the Joint Panel was under the collective-bargaining agreement, 'binding on all parties', respondent was required in some way to show that the Union's duty to represent him fairly at the arbitration had been breached before he was entitled to reach the merits of his contract claim. This, in our view, makes the suit more analogous to an action to vacate an arbitration award than to straight contract action." 451 U.S. at 62, 101 S.Ct. at 1563.

The Third Circuit opinion reached the same conclusion on facts strikingly similar to the case at bar. In *Liotta v. National Forge*, 629 F.2d 903 (CA 3, 1980) the court held that a complaint alleging that the employee "was unfairly represented before, during and after arbitration by the attorney for the International Union" when fairly read demonstrated that he sought to vacate the arbitrators award. *Idem.* at 905.

Plaintiff claims that both *Liotta* and *United Parcel* are inapplicable to the case *sub judice* because this is an action against the union and does not seek reinstatement or restitution of seniority. In reliance on this position plaintiff argues that success here will not have the same effect as vacation of the arbitrator's award. In *United Parcel* the employee sought reinstatement and backpay and only the employer petitioned the Court for certiorari. *Liotta*, too, was a suit against the employer alone.

However, plaintiff's arguments are misplaced. The Supreme Court makes clear that since both sides are bound by the arbitration an employee must show the breach of duty by the Union before the court can look behind the arbitration to the merits of his claim of wrongful discharge under the collective bargaining agreement.

In *Liotta*, the court does not discuss what remedy the employee was seeking when he filed suit, however the court there said:

"... the fact that Liotta alleges that the arbitration award is invalid due to the Unions breach of its duty of fair representation does not change the limitations period because the suit here is against the Company and not the Union."

■ It is the nature of the cause of action, not the identity of the defendant which controls the choice of limitation statutes.* Walsh cannot challenge his termination under the contract unless he first vacates the arbitrator's decision. If he is successful the fact that he seeks damages rather than reinstatement will not alter the nature of his challenge.

■ Based upon the two cases cited the court concludes that Walsh's claim under § 301 is time barred and summary judgment is appropriate.

The court also finds no breach of duty by the Union as a separate and independent reason for granting defendant's motion for summary judgment.

■ The duty owed by the union to the employees is the duty to represent their interests in good faith, *Vaca v. Sypes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). To show a violation of that duty the plaintiff must show that the actions taken by the Union had a bad faith motive. *Medlin v. Boeing Vertol*, 620 F.2d 957 (CA 3, 1980).

■ Here, plaintiffs allege that the breach of duty resulted from the failure of the Union attorney to question him concerning earlier incidents of mishandling, one of which had resulted in a discharge later bargained down to a four-day suspension. There is no evidence that the arbitrator considered these earlier incidents.

A detailed discussion of company complaints and incidents of mishandling may have had significant negative impact on the arbitrator and the attorney's decision to avoid that may have been no more than the only strategy available.·

---

* NOTE: There are some statutes, of course, which expressly apply to specified defendants, such as N.J.S. 2A:14–17, 18, 19 and 20. The limitation period on arbitration awards has no such provision.

The Union must be accorded a "wide range of reasonableness" in its role as exclusive bargaining agent for its members. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

A similar charge was leveled against a Union when the Union failed to call a witness on the employee's behalf. In that case, the Third Circuit noted that the test of fair representation is not whether the Union used the most aggressive approach. They needn't "pound on the law or the facts (or) pound on the table." Adequate, acceptable performance is enough. *Findley v. Jones Motor Freight*, 639 F.2d 953 (CA 3, 1981).

This case came before the court on defendant, Local 641's motion for summary judgment. The motion was heard on September 14, 1981. At that hearing the court inquired whether the record contained statements as to what witnesses would have said had they been called before the arbitration proceeding. Plaintiff's attorney indicated that such statements could be found in the filed depositions. The court then instructed him to extract the statements from the record and submit a list of the page references in a week.

The material submitted in response to the court's inquiry is not the list asked for. Instead, plaintiff has submitted a supplementary brief stating what witnesses "could" have said. This is no more than further argument and is unsupported by the existing record.

To meet the present motion, the court would expect Walsh at the least to present now the affidavits or certifications under penalty of perjury, of the witnesses he claims the lawyer should have called, disclosing the facts to which they would have testified. Absent such a threshold showing, all else is sheer speculation.

The facts of the case are as follows:

Plaintiff, Walsh, was an over, short and damage clerk for defendant, Boss Linco. As such, it was his duty to investigate over, short or damaged freight shipments that went through his terminal.

Plaintiff was discharged by Boss Linco for allegedly mishandling shipments. He filed a grievance with his Union, Local 641 of the Teamsters, based upon his discharge. The grievance ultimately went to arbitration where plaintiff's interests were represented by the Union's attorney, Martin List, Esq.

Plaintiff claims that the Union did not adequately represent him because the attorney failed to call witnesses who could have established plaintiff's defenses. Nowhere in the record of this case does plaintiff say what these witnesses would have said if called. Even now, represented by a different attorney, plaintiff does not supply the court with statements of these potential witnesses either by affidavit or certification.

At the hearing before the arbitrator, plaintiff was called to explain what had happened to the shipments allegedly mishandled. In his deposition, plaintiff now states that he did not completely explain his version of the incidents at the hearing. He gives two reasons for this failure. (Walsh dep. 27).

One reason is that the Union's attorney, Mr. List, advised him "not to say nothing unless asked". (Walsh dep. 18). Another reason he gives is that he didn't think of the additional facts until two or three weeks after the hearing. (Walsh dep. 21–26). However, when he did remember what he wished he had said, he didn't contact either Mr. List or his shop steward and tell them about it. (Walsh dep. 26).

It appears from the record that plaintiff's discharge on February 13, 1976, was not his first indication that there was a problem with his work. Plaintiff had been suspended twice before for mishandling shipments; in August 1975 and January 1976. (Walsh dep. 27).

The January suspension had originally been a discharge. However, the Union had negotiated with Boss Linco on plaintiff's behalf and had the discharge changed to a suspension of two weeks and eventually to four days. (Walsh dep. 23).

Each of these suspensions had been preceded by warning letters, August 7 (Walsh dep. 33) and December 12 (Walsh dep. 37) and January 19 (Walsh dep. 42). Each time Walsh received these letters, "he tore them up". (Walsh dep. 33).

Walsh did not appeal the two suspensions, although he understood that he had the right to do so. (Walsh dep. 36–37).

The February 13, 1976 letter apparently listed the dates on which Walsh had received prior warning letters and then stated the current charge of mishandling, concerning a shipment of tires. (Walsh dep. 32).

Plaintiff's complaint against Mr. List is based in part on his failure to question Walsh as to the incidents which preceded the tire incident. (Walsh dep. 38 and 40). Mr. List questioned plaintiff on the tire matter at the hearing. Mr. Brenner, attorney for Boss Linco, then questioned Walsh. Brenner asked about the prior warning letters, and specifically asked him about a shipment of refrigerators. (Walsh dep. 38–39).

Mr. List then asked Walsh more questions, but only about the tires and refrigerators, and then the hearing was adjourned. (Walsh dep. 42). Walsh made no attempt to contact Mr. List or another Union representative between the date of the hearing, April 26, 1976, and his notification of the decision in July, 1976. (Walsh dep. 45).

Suit was filed on April 14, 1978.

The issues before the court on this summary judgment motion are: 1) whether plaintiff's claim is time barred and 2) whether defendants have shown as a matter of law that they did not breach the duty of fair representation which they owed to the plaintiff.

In sum, the suit is barred by the statute of limitations, and even if it were not, plaintiff has failed to raise a genuine issue of material fact on the claim of breach of duty. On each of these grounds, defendants are entitled to judgment as a matter of law.