**James ASKEW by Robert J. Blackwell, Trustee, Plaintiff,**

v.

**F & W EXPRESS, INC., Hogan Truck Service, Inc., and Local 600 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.**

No. 81–1559C(C).

United States District Court, E.D. Missouri, E.D.

Dec. 30, 1982.

As Amended Jan. 3, 1983.

Charles R. Oldham, St. Louis, Mo., Robert Blackwell, Flat River, Mo., for plaintiff.

Dennis C. Donnelly, Cary Hammond, Richard Shinners, St. Louis, Mo., Robert W. Cowan, Nashville, Tenn., Charles E. Valier, St. Louis, Mo., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, District Judge.

This matter was tried to the Court and the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, James Askew, was employed by Harper Freight Lines commencing in 1973 until the company ceased operation July 3, 1979. Askew worked only one additional day for Harper on October 23, 1979, on which day Harper was winding up its operations. After this suit was filed, the plaintiff James Askew filed a petition in bankruptcy. Robert J. Blackwell was appointed trustee by the Bankruptcy Court. Blackwell gave his consent to having this cause of action continue.

2. While employed by Harper Freight Lines, Askew was a member of a bargaining unit of employees of Harper represented by Local 600 affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

3. Harper Freight Lines and Local 600 were parties to a collective bargaining agreement governing the terms and conditions of employment of the bargaining unit of which plaintiff was a member. This agreement expired on March 31, 1979.

4. Hogan Truck Service, Inc. is a Missouri corporation engaged in the local cartage transportation of goods within the St. Louis area. Hogan was a signatory to the National Master Freight Agreement and the Central States Area Local Cartage Supplemental Agreement effective for the period April 1, 1979 to March 31, 1982, and the St. Louis Area Addendum thereto originally effective from April 1, 1976 through March 31, 1979 and extended indefinitely by a Memorandum of Agreement dated March 26, 1979. Askew was never employed by Hogan.

5. Defendant F & W Express, Inc. is a foreign corporation with its principal place of business in Memphis, Tennessee and is engaged in over-the-road transportation of goods by truck in interstate commerce. F & W was a signatory to the National Master Freight Agreement and the Southern Conference Area Supplement effective during the period April 1, 1979 through March 31, 1982. F & W never had a contract with Local 600 and Askew was never employed by F & W.

6. After Harper ceased operations it entered into negotiations for the purchase by F & W Express of Harper's operating rights from Dyersberg, Tennessee to St. Louis, Missouri, pending final approval by the Interstate Commerce Commission. F & W Express was not a signatory to the Central States Area Local Cartage or over-the-road Supplemental Agreements. The rights between St. Louis and Dyersberg of Harper were leased to F & W. This lease was approved by the Interstate Commerce Commission on January 18, 1980.

7. During negotiations between F & W and Harper for the rights between Dyersberg and St. Louis, F & W decided that it would not be economically feasible to open its own terminal facility in St. Louis, based on an average of 540 lbs. of freight per day

between these points. Thereafter, F & W contacted Hogan to determine if Hogan would perform the cartage service in the St. Louis area as their agent.

8. Local 600 upon learning of these arrangements talked to F & W and Hogan to see if any of Harper's former employees could be placed on Hogan's seniority list.

9. By agreement dated March 3, 1980, Hogan agreed to perform F & W's local cartage work in St. Louis and further agreed to dovetail the most senior Harper employee, Gus Hicks, into its seniority list. Hogan agreed to take only one of Harper's former employees and no more.

10. Local 600 requested that the matter be placed on the agenda of the Joint Area Change of Operations Committee in order to determine whether the contract had been properly applied. The matter was placed on the Change of Operations Committee agenda and was heard by the Committee on March 12, 1980. Plaintiff, James Askew, was notified that the matter was being placed on the agenda for the Change of Operations Committee for March 12, 1980. Askew did not appear. Local 600, F & W and Hogan were represented at the hearing.

11. The Change of Operations Committee decided that Hogan would be required to hire the most senior Harper employee, Gus Hicks, and further established a six month window period for the purpose of reviewing the amount of freight being handled by Hogan for F & W to determine whether or not any additional employees of Harper should be hired.

12. The seniority list of Harper was as follows in order of seniority:

> Gus Hicks (Driver)
> Thomas Johnson (Dock)
> Raymond Dewell (Driver)
> Edward Freeman (Driver)
> Clarence V. Atherton (Dock)
> James Askew (Driver)
> Donald Murphy (Driver)
> Michael Richter (Dock)
> James Christeson (Driver)
> Gregory Meyers (Driver)

None of the individuals on the list other than Gus Hicks was offered employment by Hogan.

13. Askew filed three grievances in March of 1980 concerning F & W's leasing of rights from Harper.

a. The first grievance, dated March 6, 1980, claimed that Askew should have been hired for the period during which Gus Hicks was sick and off work. That period lasted for two weeks. The grievance was denied at the Local Area Committee level. Askew was present at the hearing and did not appeal or request the Union to appeal.

b. The second grievance, dated March 18, 1980, claimed that F & W was dropping trailers in Pevely, Missouri, and that Hogan was going beyond the commercial zone with City drivers. He requested two eight hour "Minis" per day. Hogan was exchanging F & W trailers in Pevely, Missouri. The drivers who performed this work were qualified to drive "over-the-road." This situation lasted approximately two weeks after which time F & W brought its trailers into the St. Louis commercial zone.

This grievance was deadlocked at the Local Area Committee level on March 28, 1980. Askew was present and represented by Local 600. The grievance proceeded to the next step at the Joint Area Change of Operations Committee in Chicago, Illinois where it was heard. Askew was present before the Joint Operations Committee. He was also represented by Local 600. The evidence was heard. The grievance was denied.

c. The third grievance, dated March 19, 1980, claimed that Askew had not received proper notice for the March 12, 1980 hearing before the Joint Area Change of Operations Committee. This grievance deadlocked at the Local Area Committee level. Askew was present and represented by Local 600. The grievance was then presented to the Joint Area Change of Operations Committee in Chicago, Illinois, where it was heard in June of 1980. Askew was present and was represented by Local 600. The evidence was presented and the grievance was denied.

14. During the period from March 12, 1980 through May 14, 1980, Local 600 monitored the hours being spent by Hogan as a local cartage agent for F & W. Ted Welch and Joe Scaglione of Local 600 urged the Change of Operations Committee to require that an additional Harper employee be hired by F & W and/or Hogan but their arguments were denied.

15. On May 14, 1980, Hogan cancelled its agreement with F & W to perform local cartage work. F & W had previously advised Hogan that it was not pleased with Hogan's charges. Accordingly, Hogan cancelled the agreement.

16. Between May 14, 1980 and the expiration of the window period F & W did not engage another local cartage agent to perform its work in St. Louis.

17. In August, 1980, F & W by letter requested that Local 600 place the matter of F & W's obligations to Harper's employees back to the Joint Area Change of Operations Committee for clarification of its obligations in light of the fact that the six month window period previously established was due to expire in September.

18. The Joint Area Change of Operations Committee met in Chicago in September of 1980 and heard the request for clarification. At the hearing, Ted Welch represented Local 600 and the plaintiff. The plaintiff, Askew, was present and was heard. F & W was present. The Committee decided that the window period had expired and that the only obligation F & W had to Harper employees was to Gus Hicks, the most senior employee. Plaintiff was told by the Committee that he had no employment rights with F & W.

On May 7, 1981, plaintiff wrote two letters to Tim Barnes, Vice-president of Local 600. In the first letter plaintiff requested reopening of his grievance dated March 18, 1980 relating to the Pevely, Missouri run. The second letter referred to a separate grievance which protested the use of a non-union drayage company in St. Louis. The second letter referred to the March 18, 1980 grievance and reiterated plaintiff's position that F & W could not use Pevely, Missouri to drop and pick up freight. Plaintiff's request to reopen the March 18th grievance was heard by the Joint Area Change of Operations Committee in December, 1981. Askew's grievance was presented by two Local 600 business agents. Askew was present. He was given an opportunity to be heard. The Committee denied plaintiff's request to reopen his grievance and ruled that the evidence sought to be presented by the plaintiff was not new evidence and further that the plaintiff was improperly before the Committee.

19. The instant lawsuit was filed a few days before the December, 1981, Committee hearing and decision.

20. In February, 1981, Askew cashed a check dated January 30, 1981, from Local 600 in the amount of $12,500 which contained the following endorsement:

Endorsement and negotiation of this check constitutes a full and final release of any and all claims of any nature whatsoever against Highway and City Freight Drivers, Dockmen and Helpers Local Union 600 affiliated with the International Brotherhood of Teamsters including all claims asserted in Cause No. 80–0850(CA) United States District Court, Eastern Division.

This endorsement was signed by the Plaintiff, James Askew, and by his attorney.

*Conclusions of Law*

1. Jurisdiction of this Court is based on Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

2. Plaintiff has not established that F & W has breached a collective bargaining agreement between itself and Local 600 since none ever existed. Therefore, plaintiff is unable to maintain an action under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

3. Plaintiff was never employed by Hogan and never established any agreement which authorized him to be hired by Hogan. Accordingly, plaintiff has no cause of action against Hogan under Section 301

of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

■ 4. All of the grievances filed by the plaintiff were heard and decided against plaintiff by a Committee established pursuant to the terms of a collective bargaining agreement. These decisions are final and binding upon the plaintiff.

■ 5. Plaintiff has shown no proof of improper representation by Local 600 or that Local 600 breached any duty of fair representation owed to the plaintiff.

■ 6. Any action which plaintiff may have had against Local 600 is barred by the release which he gave to Local 600 when he signed the check dated January 30, 1981 and which he cashed in February of 1981.

■ 7. Plaintiff's claims are barred by the Statute of Limitations. Plaintiff's claims were heard and decided in March and June of 1980. There are no contractual provisions allowing plaintiff to move for a reopening or rehearing of these grievances. Neither has the plaintiff shown that he was improperly represented in the presentation of these grievances. Accordingly, these causes of action accrued in June of 1980 when the grievances were decided. *Butler v. Local 823 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 514 F.2d 442 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). In April, 1981, the Supreme Court rendered its decision in *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Under this case, plaintiff had only until the next term of court to bring this action pursuant to 435.120 R.S.Mo. Even if his action was considered tolled until the *Mitchell* decision was rendered, plaintiff still would be required to bring this action prior to the second Monday of May, 1981. This suit was not filed until December of 1981.

8. A judgment will be entered rendering judgment in favor of all three defendants and against the plaintiff. This cause will be dismissed with prejudice.