**Yolande ASSAD, Plaintiff-Appellant,**

v.

**MOUNT SINAI HOSPITAL, Mount Sinai Hospital Services, Leon J. Davis, President, John Doe, Secretary-Treasurer, District 1199, National Union of Hospital and Health Care Employees, a Division of the Retail, Wholesale, and Department Store Union, AFL–CIO, an Unincorporated Association, Defendants-Appellees.**

**No. 99, Docket 82–7251.**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1982.

Decided March 9, 1983.

Yolande Assad, pro se.

Floran L. Fink, New York City (Vincent Alfieri, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, of counsel), for defendant-appellee Mount Sinai.

Richard Dorn, New York City (Jerome Tauber, Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, of counsel), for defendants-appellees District 1199, et al.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court was asked to determine the appropriate statute of limitations period in cases where an employee, after an unfavorable arbitration decision, brings a wrongful discharge action against his employer and a fair representation claim against his union, both pursuant to section 301(a) of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185(a) (1976). The *Mitchell* Court found that at least as to the action against the employer, a wrongful discharge claim under the LMRA is analogous to a state action to vacate an arbitration award. Relying on its decision in *International Union, United Automobile, Aerospace & Agricultural Implement Workers (UAW), AFL–CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Court concluded that an employee's post-arbitration wrongful discharge claim against the employer under section 301 is subject to the limitations period found in the relevant state arbitration statute.

In the action giving rise to the appeal before us, the United States District Court for the Eastern District of New York,

Bramwell, *J.,* granted defendant's Fed.R. Civ.P. 12(b)(6) motion to dismiss the complaint. The court ruled that even though the appellant's discharge and fair representation claims were never arbitrated, it was nonetheless bound by *Mitchell* to apply the state arbitration limitations period. Judge Bramwell accordingly dismissed the appellant's claims against both the employer and union as time-barred under the ninety day limitations period found in the New York State arbitration statute, N.Y.Civ.Prac.Law § 7511(a) (McKinney 1980). We are asked on appeal first to determine whether the *Mitchell* precedent should apply to unlawful discharge cases in the absence of an arbitration award, and second, whether *Mitchell* implicitly decided that fair representation claims against the union must also be governed by the limitations period found in the state arbitration statute.

We find that *Mitchell* is neither controlling nor persuasive where the employee's discharge claim was never arbitrated. The six month limitations period found in section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b) (1976), is the more appropriate choice. Because appellant failed to bring her claim within the six month period, we affirm the district court's order dismissing her complaint against the employer, Mount Sinai Services-City Hospital Center at Elmhurst (Mount Sinai). In view of *Flowers v. Local 2602 of the United Steelworkers,* 671 F.2d 87 (2d Cir.), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982), we must hold that *Mitchell* does not control in fair representation actions brought against the union. In *Flowers* we concluded that a fair representation action under section 301(a) of the LMRA is most analogous to a malpractice claim brought under state law. We accordingly ruled that the three year limitations period found in the New York malpractice statute, N.Y.Civ.Prac.Law § 214(6) (McKinney Supp.1982), governed the dispute. *Flowers* represents the law of the Circuit

1. The grievance and arbitration procedures outlined in the collective bargaining agreement provide:

and we must follow it. Because appellant commenced her suit within the three year period, we reverse the district court's order dismissing the complaint as time-barred against the union, District 1199, National Union of Hospital and Health Care Employees (District 1199), and remand to the district court for further proceedings.

## BACKGROUND

For the purposes of deciding the legal questions raised by this *pro se* appeal, we will assume that the following factual statement is undisputed. Appellant Yolande Assad worked for approximately thirteen years as a laboratory technologist at Mount Sinai. During 1980, Assad was granted a medical leave of absence, effective to July 7, 1980. When Assad failed to report for work by that date the Assistant Director of Personnel at Mount Sinai sent her a telegram indicating that the employer would presume that she had voluntarily resigned unless she reported for work or contacted the hospital by July 24, 1980. That date passed without word from Assad and the hospital sent her a letter stating that its employment records would reflect her voluntary resignation as of July 7, 1980.

At some point later in 1980, Assad informed District 1199 that she wished to contest the employer's decision to terminate her. Assad explained that she was undergoing medical treatment during July of 1980 and had been unable to respond to the hospital's inquiries. Assad indicated that she never intended to resign and that she wished to be reinstated to her former position. The union agreed to intercede on her behalf.

The collective bargaining agreement between District 1199 and Mount Sinai provided for a three-step grievance procedure to resolve disputes, and for binding arbitration if the dispute was not resolved through the grievance process.[1] In cases of employ-

ARTICLE XXXI
Grievance Procedure
1. A grievance shall be defined as a dispute or complaint arising between the parties hereto under or out of this Agreement or the

interpretation, application, performance, termination, or any alleged breach thereof, and shall be processed and disposed of in the following manner:

Step 1. Within a reasonable time (except as provided in Article XXIX), an Employee having a grievance and/or his/her Union delegate or other representative shall take it up with his/her immediate supervisor. The Employer shall give its answer to the Employee and/or his/her Union delegate or other representative within five (5) working days after the presentation of the grievance in Step 1.

Step 2. If the grievance is not settled in Step 1, the grievance may, within five (5) working days after the answer in Step 1, be presented in Step 2. When grievances are presented in Step 2, they shall be reduced to writing, signed by the grievant and his/her Union representative, and presented to the grievant's department head or his/her designee. A grievance so presented in Step 2 shall be answered by the Employer in writing within five (5) working days after its presentation.

Step 3. If the grievance is not settled in Step 2, the grievance may, within five (5) working days after the answer in Step 2, be presented in Step 3. A grievance shall be presented in this step to the Personnel Director or Administrator of the Employer, or his/her designee, and he/she or his/her designee shall render a decision in writing within five (5) working days after the presentation of the grievance in this step.

Failure on the part of the Employer to answer a grievance at any step shall not be deemed acquiescence thereto, and the Union may proceed to the next step.

Anything to the contrary herein notwithstanding, a grievance concerning a discharge or suspension may be presented initially at Step 3 in the first instance, within the time limit specified in Article XXXI, Section 1.

Without waiving its statutory rights, a grievance on behalf of the Employer may be presented initially at Step 3 by notice in writing addressed to the Union at its offices.

2. All time limits herein specified shall be deemed to be exclusive of Saturdays, Sundays and holidays.

3. Any disposition of a grievance from which no appeal is taken within the time limits specified herein shall be deemed resolved and shall not thereafter be considered subject to the grievance and arbitration provisions of this Agreement.

4. A grievance which affects a substantial number or class of Employees, and which the Employer representative designated in Steps 1 and 2 lacks authority to settle, may initially be presented at Step 3 by the Union representative.

## ARTICLE XXXII
### Arbitration

1. A grievance, as defined in Article XXXI, which has not been resolved thereunder may, within fifteen (15) working days after completion of Step 3 of the grievance procedure, be referred for arbitration by the Employer or the Union to an arbitrator selected in accordance with the procedures of the American Arbitration Association. The arbitration shall be conducted under the Voluntary Labor Arbitration Rules then prevailing of the American Arbitration Association.

2. The fees and expenses of the American Arbitration Association and the arbitrator shall be borne equally by the parties.

3. The award of an arbitrator hereunder shall be final, conclusive and binding upon the Employer, the Union and the Employees.

4. The Arbitrator shall have jurisdiction only over disputes arising out of grievances, as defined in Section 1 of Article XXXI, and he/she shall have no power to add to, subtract from, or modify in any way any of the terms of this Agreement.

5. A grievance contesting a discharge may, within fifteen (15) working days after completion of Step 3 of the grievance procedure, be referred for arbitration to an arbitrator appointed by the American Arbitration Association from the Panel of twenty-six (26) arbitrators listed in Schedule B annexed hereto. Said arbitrators shall serve on the Panel for the period of one (1) year or until the termination date of this Agreement, whichever is sooner, and shall have jurisdiction only over grievances contesting discharges. The Association shall appoint said arbitrators in strict rotation order at the time it receives a request for the appointment of an arbitrator from the Panel in a discharge case. If an arbitrator so appointed is unable to hold a hearing in a particular case for any reason within one (1) month from the date of his/her appointment the Association shall appoint the arbitrator next in rotation, and so on. Should none of the arbitrators on the Panel be available within such one (1) month period, then the Association shall promptly (a) so notify both parties and (b) proceed to process the case pursuant to Section 1 of this Article XXXII, unless the parties consent to a later hearing date before the arbitrator so appointed. The fees of the arbitrators shall be borne equally by the parties. In the event of a vacancy in the Panel, the parties shall expedite the selection of an arbitrator to fill the vacancy or vacancies. If, at the expiration of the term of the Panel of Arbitrators the parties are unable to reach agreement as to arbitrators to serve thereafter, the parties shall select such arbitrators by each submitting a list of fifty-two (52) names and in turn striking such names until twenty-six (26) names remain.

ee discharge, the agreement stipulated that the parties should proceed immediately to step three, which requires the personnel director or administrator of the employer to render a decision within five business days after the grievance is presented.

On October 9, 1980, a meeting was held to consider Ms. Assad's grievance. In attendance were Assad, a union delegate, a union representative, and Doctors Zilversmit and Gtzan from Mount Sinai. Although no formal written decision was issued after the meeting, the employer apparently informed the union that it would not reinstate Assad. Six days later, on October 15, 1980, District 1199 sent a letter to Mount Sinai stating that: "If this situation isn't rectified immediately and Ms. Assad reinstated, this matter will go to arbitration."

The union ultimately decided to forego arbitration on behalf of Assad, purportedly because her claim lacked substantial merit. There is no showing that the union ever communicated this decision to Assad. Pursuant to the terms of the collective bargaining agreement, the employer's discharge decision became final and binding fifteen business days after the grievance procedure was concluded.

In June of 1981, eight months after her grievance was denied, Assad, through her attorney, commenced an action in the New York State Supreme Court, Queens County. She alleged that Mount Sinai had violated the collective bargaining agreement by discharging her without good cause and that District 1199 had breached its duty of fair representation by failing to represent her interests zealously. The action was removed in July of 1981 to the United States District Court for the Eastern District of New York and was assigned to Judge Bramwell.

In an order dated March 3, 1982, Judge Bramwell ruled that Assad's claims against both the employer and the union were time-barred by the ninety day limitations period found in the New York statute governing

arbitration awards, N.Y.Civ.Prac.Law § 7511(a) (McKinney 1980). *Assad v. Mount Sinai Hospital,* 81 Civ. 2273 (E.D. N.Y. Mar. 5, 1982), *reprinted in* App. of Appellant at 4. Although the order did not explain the court's reasoning, Judge Bramwell did state in open court on February 19, 1982, that he found "the instant case within the Mitchell holding for purposes of determining the applicable statute of limitations." Transcript of proceedings Feb. 19, 1982, *reprinted in* App. of Appellant at 18–19. This *pro se* appeal followed.

## DISCUSSION

### A. *Section 301 Claim Against the Employer*

In *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Court focused on the appropriate limitations period where an employee, after an unfavorable arbitration decision, commences a section 301 unlawful discharge action against the employer and a fair representation suit against the union. The *Mitchell* Court analogized the employee's suit to an action under state law to vacate an arbitration award and accordingly ruled, at least insofar as the claim against the employer, that the action was governed by the three month limitations period found in the New York arbitration statute, N.Y.Civ. Prac.Law § 7511(a) (McKinney 1980). *Id.* at 61, 64, 101 S.Ct. at 1563, 1564.

The claims presented here are nearly identical to those raised in *Mitchell*—an aggrieved employee seeks redress under the LMRA, specifically charging that the employer violated the collective bargaining agreement when terminating her and that the union breached its duty of fair representation in connection with her discharge. The major distinction is that unlike *Mitchell,* Assad's grievance was never arbitrated. The district court ruled that the fact of arbitration was not controlling for purposes of determining the appropriate limitations period. Judge Bramwell reasoned that as

---

Collective Bargaining Agreement Between League of Voluntary Hospitals and Homes of New York and District 1199, National Union of Hospital and Health Care Employees RWDSU/AFL–CIO 1980–1982, 44–47, *reprinted in* App. for Appellees at 25, 49–50.

long as a final and binding decision was reached during the grievance process, the court would be bound by *Mitchell* to apply the limitations period found in the New York State arbitration statute. We do not agree.

Throughout the *Mitchell* opinion, the Court relied on the existence of an arbitration award. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 61, 62 & n. 4, 63–64, 101 S.Ct. at 1563, 1564 & n. 4, 1565. Indeed, it makes good sense to apply a short limitations period where the grievance has been arbitrated. The parties have enjoyed the advantages of a full, albeit informal, evidentiary hearing before an impartial decisionmaker, and the grounds for overturning the arbitration award on appeal are quite limited. *See John T. Brady & Co. v. Form-Eze Systems, Inc.,* 623 F.2d 261, 264 (2d Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *Wire Service Guild, Local 222, The Newspaper Guild, AFL–CIO v. United Press International, Inc.,* 623 F.2d 257, 260–61 (2d Cir.1980). Moreover, the parties typically view arbitration as an expeditious means of resolving disputes that arise under the collective bargaining agreement, and the three month limitations period satisfies this objective.

■ Where the parties have not enjoyed the benefits of arbitration, a different case is presented. Indeed, the factual background of this case exposes the serious problems created by a very short limitations period where the union decides to forego arbitration. District 1199 notified Mount Sinai by letter dated October 15, 1980 that the union would commence arbitration proceedings on behalf of Assad if Mount Sinai persisted in its refusal to reinstate her. Although District 1199 apparently decided at some later point that Assad's grievance lacked merit and therefore should not be arbitrated, there is no claim that the union communicated its decision to Assad. Nor is it claimed that the union informed Assad that, for purposes of appeal, her grievance would be deemed final and binding fifteen business days after conclusion of the grievance process.

The appellee would have us rule that even though Assad never enjoyed the advantages of a formal arbitration, and even though she was not privy to the union's decision to forego arbitration, we should nonetheless require her, within three months of the conclusion of the step three proceeding, to (1) ascertain whether her union actually intended to arbitrate the pending grievance; (2) determine when the employer's refusal to reinstate her became final and binding under the terms of the collective bargaining agreement; and (3) commence court proceedings. This judicially-imposed obligation is unnecessarily burdensome. The analogy between the treatment given Assad's grievance and a fully-arbitrated grievance is strained. On these facts there is no compelling reason to apply the state arbitration statute of limitations to a labor dispute that never reached arbitration.

■ We believe that the more appropriate limitations period is found in section 10(b) of the NLRA, 29 U.S.C. § 160(b) (1976), which provides a six month time bar for unfair labor practice actions commenced under the statute. Our conclusion, which is influenced by Justice Stewart's concurring opinion in *Mitchell,* 451 U.S. at 65, 101 S.Ct. at 1565, recognizes that a section 301 discharge claim does not closely resemble any state law action. In fact, to prevail against the employer, the aggrieved employee must not only prove a breach of the collective bargaining agreement, but must also demonstrate that the union breached its duty of fair representation. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). This is a uniquely federal cause of action which is properly governed by a federal limitations period.

There are three additional reasons why the section 10(b) limitations period makes good sense in non-arbitrated discharge cases. First, it reflects a judgment by Congress in a closely analogous context—*i.e.,* unfair labor practice actions commenced under the NLRA—that six months represents a proper accommodation between the

employee's right to be heard and the important national interest in industrial peace. *See Local Lodge No. 1424, International Association of Machinists, AFL–CIO v. NLRB (Machinists),* 362 U.S. 411, 428, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). Second, and closely related, the six month period ensures that all labor disputes will be resolved expeditiously, thereby strengthening the "stability of bargaining relationships." *Id.* at 425, 80 S.Ct. at 831, *quoted in United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 68, 101 S.Ct. at 1567 (Stewart, J., concurring). In fact, the *Mitchell* Court in part premised its decision to apply the three month arbitration period by explaining that the alternative choice, a six year period for contract actions, would be unworkable:

> This system [collective bargaining process], with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later.
>
> ... Given the choices present here, and the undesirability of the results of the grievance and arbitral process being suspended in limbo for long periods, we think the District Court was correct when it chose the 90-day period imposed by New York for the bringing of an action to vacate an arbitration award.

451 U.S. at 64, 101 S.Ct. at 1564–65.

Finally, the decision to apply *one* federal limitations period rather than looking to analogous, but potentially disparate state limitations periods ensures that all non-arbitrated employee grievances enter the federal courts on equal footing. The Supreme Court has recognized the strong "national interest in uniformity in industrial relations," particularly where the labor dispute implicates " 'those consensual processes that federal labor law is chiefly designed to promote—*the formation of the ... agreement and the private settlement of disputes under it.*' " *Id.* at 66, 101 S.Ct. at 1565 (Stewart, J., concurring) (quoting *Hoosier Cardi-*

*nal,* 383 U.S. at 702, 86 S.Ct. at 1111) (emphasis added in *Mitchell*). Assad's claim directly challenges the "private settlement of disputes" under a collective bargaining agreement. She charges, in effect, that the grievance process "broke down" when acting on her claim. In these circumstances, a uniform limitations period is highly desirable. *See generally Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962).

We recognize that the result reached here could be viewed to conflict with the admonition in *International Union, United Automobile, Aerospace & Agricultural Implement Workers (UAW), AFL–CIO v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), that the federal courts must look to the most closely analogous *state* statute of limitations when considering section 301 claims. We see no conflict with *Hoosier Cardinal,* for two reasons. First, the Court emphatically limited its holding to the precise claim presented in that case:

> The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question.

383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7.

Second, we are reminded that the federal courts will not apply a state limitations period where the options under state law would be inconsistent with national labor policy:

> But the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it

is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. "Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide." *Johnson v. Railway Express Agency,* 421 U.S. 454, 465 [95 S.Ct. 1716, 1722, 44 L.Ed.2d 295]. State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute. *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). The options available under state law—the three month arbitration period and the six year contract period—do not advance the goals of the LMRA. The arbitration period, as explained earlier in this opinion, is unnecessarily short, and in any event it fails to satisfy the "analogy" test required by *Hoosier Cardinal;* a non-arbitrated grievance does not resemble a fully-arbitrated claim. The Supreme Court has intimated that the six year contract period is similarly problematic. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 64, 101 S.Ct. at 1564. In fact, the application of a six year period would encourage employers to arbitrate every grievance in order to limit their exposure to lawsuits to the shorter three month limitations period held applicable in *Mitchell.* The Supreme Court has cautioned in a similar context that the arbitration process becomes unworkable where increasing numbers of grievances are arbitrated:

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover,

under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.

*Vaca v. Sipes,* 386 U.S. 171, 191–92, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967) (footnote omitted); *see Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976).

We conclude that the six month limitations period found in section 10(b) of the NLRA is the best choice among the available options.[2] Because Assad failed to commence her action against the employer within the six month period, we affirm the order of the district court dismissing the complaint against Mount Sinai.

### B. Claim Against District 1199

■ In *Flowers v. Local 2602 of the United Steel Workers,* 671 F.2d 87 (2d Cir.), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982), we explained that a fair representation claim against the union, although closely related to an unlawful discharge action brought against the employer, was qualitatively different. *Accord Newton v. Local 801 Frigidaire Local of the International Union of Electrical Workers,* 684 F.2d 401, 403 (6th Cir.1982) (section 301 claim against union governed by six year limitations period for actions based on liabilities created by statute); *Hand v. International Chemical Workers Union,* 681 F.2d 1308, 1312 (four years), *reh'g en banc granted,* 681 F.2d 1308, 1313 (11th Cir.1982). Specifically, we noted that unlike the discharge claim, the fair representation action "could not be resolved in the arbitration proceeding because it arose out of the conduct of that proceeding itself." *Flowers,*

---

**2.** Justice Stevens has asked how the courts can apply the section 10(b) limitations period to unlawful discharge cases when there is no evidence of congressional intent to extend the section 10(b) period beyond unfair labor practice cases. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. 71, 75–76 & n. 9, 101 S.Ct.

1568, 1570–71 & n. 9, 67 L.Ed.2d 732 (Stevens, J., concurring in part and dissenting in part). Our decision is not grounded on legislative intent, but rather reflects our considered judgment that the section 10(b) period is the most reasonable option available.

671 F.2d at 89. Citing this distinction, we held that fair representation claims, rather than resembling state actions to vacate an arbitration award, were more closely analogous to a malpractice dispute under state law. This decision remains the prevailing law in our Circuit and we follow it here.

Because Assad commenced her action against District 1199 within the three year period found in the New York malpractice statute, N.Y.Civ.Prac.Law § 214(6) (McKinney Supp.1982), we reverse the order of the district court dismissing her complaint against the union.[3] The matter is remanded to the district court for consideration of the merits of Assad's claim.

---

**3.** We recognize the practical problems created by disparate limitations periods where, as here, the two actions are closely related. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 66–67, 101 S.Ct. at 1566 (Stewart *J.,* concurring in the judgment). Were we not bound by *Flowers,* Judge Van Graafeiland and the author of the opinion would be inclined to apply the section 10(b) limitations period against both the union and the employer on the basis that the reasons for adopting that period are more persuasive in fair representation actions. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 67 & n. 3, 101 S.Ct. at 1566 & n. 3 (citing those courts that have held that a union's breach of fair representation is an unfair labor practice under the NLRA) (Stevens, *J.,* concurring in judgment). Judge Oakes does not join us in this view. The entire panel looks forward to guidance from the Supreme Court when it considers *Flowers.*