**James C. HARPP, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

United States District Court, N.D. New York.

Sept. 21, 1983.

Grasso, Rodriguez, Putorti & Grasso, Schenectady, N.Y., for plaintiff; Michael Cuevas, Schenectady, N.Y., of counsel.

Bond, Schoeneck & King, Albany, N.Y., for defendant; Richard C. Heffern, Albany, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff James C. Harpp brings this action against his former employer General Electric Company (G.E.) for breach of contract, written and implied. He seeks reinstatement to his former job and damages for his wrongful discharge. The action was commenced on December 28, 1977 in New York State Supreme Court and removed to Federal Court as an action under Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185.

Before the Court are defendant's motions for summary judgment pursuant to Fed.R. Civ.P. 56(b).

BACKGROUND

Plaintiff commenced working at General Electric's Schenectady plant on or about August 18, 1969, and claims that he was discharged without good cause during a period when he was unable to work due to illness. Both parties agree that the effective date of termination was January 27, 1977. Harpp received sick benefits from September 29, 1976 until December 19, 1976; the company suspended his benefits because its doctor determined that he was able to work. Harpp contends that his own doctor advised him not to return to work.

While employed at G.E., plaintiff was a member of Local 301, International Union of Electrical, Radio and Machine Workers (AFL–CIO). Local 301 and the International had a collective bargaining agree-

ment with General Electric, which governed the terms and conditions of employment.

While decision was pending on defendant's motion for summary judgment for failure to exhaust contractual grievance and arbitration remedies, the defendant's answer, upon motion, was amended to assert a defense of timeliness and a further motion for summary judgment based thereon was made by defendant.

DISCUSSION

## 1. Exhaustion of Contractual Remedies

While plaintiff's complaint does not explicitly mention the collective bargaining agreement in effect between G.E. and the union, this action concerns a claim of wrongful discharge that is before the Court pursuant to Section 301 of the LMRA, 29 U.S.C. § 185. This section reads in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Plaintiff's federal claim is for breach of the written contract; plaintiff, in his answers to interrogatories, states that the written contract on which he bases his claim is none other than the collective bargaining agreement between G.E. and the union. In addition, plaintiff asserts a pendent state claim for breach of implied contract; he submits that he had an unwritten agreement with his employer in which the two parties concurred that he could continue in his job indefinitely so long as he performed his duties faithfully.

The collective bargaining agreement governing plaintiff's employment contains provisions for grievance and arbitration. The plaintiff, in answering defendant's interrogatories, admits that he did not comply with these procedures. Under the agreement, grievances, depending on their nature, are processed through a two- or three-step process. *See* Defendant's Exhibit G, Article XIII. After the grievance procedure is exhausted, either the union or G.E. may submit still unresolved disputes, including those involving discharge, to arbitration. *See* Defendant's Exhibit G, Article XV.

■ It is well settled that where an agreement contains grievance and arbitration provisions, the employee must attempt to exhaust those provisions before seeking judicial relief, if those provisions are intended to constitute the exclusive remedy for breach of contract. *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). Unless the contract provides otherwise, the employee must attempt to make use of grievance procedures agreed upon by the employer and the union. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 658, 85 S.Ct. 614, 619, 13 L.Ed.2d 580 (1965). *See United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf N. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). *See also Kowalik v. General Marine Transport Corp.,* 411 F.Supp. 1325 (S.D.N.Y.1976), *aff'd,* 550 F.2d 770 (2d Cir.1977), *cert. denied,* 434 U.S. 830, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). National labor policy favors the arbitral process in order "to promote industrial stabilization through the collective bargaining agreement." *Warrior & Gulf N. Co.,* 363 U.S. at 578, 80 S.Ct. at 1350.

■ Exhaustion is not required if the parties do not intend the grievance and arbitration procedure in the contract to be the exclusive remedy. *Vaca,* 386 U.S. at 184 n. 9, 87 S.Ct. at 913 n. 9; *Republic Steel,* 379 U.S. at 657–68, 85 S.Ct. at 618–24; *Grogg v. General Motors Corp.,* 444 F.Supp. 1215, 1222 (S.D.N.Y.1978). If the grievance and arbitration procedures are intended as the exclusive remedy, an employee will not be required to exhaust the procedures if (1) the conduct of the employer amounts to a repudiation of the contractual procedures, and if (2) the union wrong-

fully refuses to process the employee's grievance through the contractual procedures. *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914.

It is the defendant's contention that, because plaintiff failed to use the informal methods provided under the contract, he is precluded from suit. Plaintiff responds to defendant's motion by asserting that the contract's grievance and arbitration scheme is one that is at the option of the employee to use. In addition, he avers that neither the union nor the employer notified him that the procedure was mandatory.

■ Article VIII, Clause 1 of the collective bargaining agreement here reads as follows:

> Grievances may be filed by an employee or group of employees, a Steward or the Local. Grievances of a general nature filed by the Local shall be initiated at the second step of the grievance procedure.

*See* Defendant's Exhibit G. Plaintiff's argument that the procedure is permissive is founded on the use of the word "may"; he interprets the word as used in this context to mean that the employee may file a grievance, or may initiate a court action. This Court finds, however, that the usage employed here means that any of the parties listed, the employee, the group of employees, the steward, or the local, could file the grievance, not that the grievance procedure may be bypassed in favor of civil action.

A contract under review in *Republic Steel* contained a similar phrase; it read, "[a]ny employee who has a complaint may discuss the alleged complaint with his Foreman in an attempt to settle it." If not settled, the complaint, in that scheme, was transformed into a grievance that was handled in a three-step process. The *Republic* court reasoned that the "permissive 'may' does not of itself reveal a clear understanding between the ... parties that individual employees ... are free to avoid the contract procedure ... in favor of a judicial suit. Any doubts must be resolved against such an interpretation." *Republic Steel*, 379 U.S. at 659, 85 S.Ct. at 619. *See Gangemi v. General Electric Co.*, 532 F.2d 861 (2d Cir.1976); *Willo*

*Packing Co., Inc. v. Butchers, Food Handlers, Etc.*, 450 F.Supp. 598 (S.D.N.Y.1978).

Plaintiff opines that Article XIII(3), which concerns the imposition of a disciplinary penalty after a history of written warning notices, is further demonstration that the grievance-arbitration procedure is permissive, although the pleadings do not reveal that Harpp was disciplined after a series of warnings. This section reads:

> Before imposing a disciplinary penalty of discharge which is based upon the cumulative effect of written warning notices, the Company will notify the employee concerned one week in advance. The matter may be made a subject for grievance discussions, but such discussions shall not prevent imposition of the penalty pending their final outcome, and in the event it is determined that an employee has been improperly penalized, he will be reimbursed for any loss of wages sustained as a result of imposition of the penalty.

Defendant's Exhibit G, Article XIII(3). The Court does not read this section as being a clear indication that the parties did not intend the arbitral process as the exclusive remedy. *See Republic Steel.*

Plaintiff also contends that he was never informed that his job was terminated, but only that he had lost continuity of service. The defendant discharged plaintiff by notifying him that, because he was absent from work for more than two weeks, his "continuity of service" was broken. The phrase "continuity of service" is the subject of Article VIII of the agreement. *See* Defendant's Exhibit G. In Article VIII(2) of the collective bargaining agreement, it is stated that "continuity of service, if any, will be lost whenever the employee: (1) Quits, resigns, or is discharged." A question of interpretation of terms of the contract, if still unsettled after following the grievance procedure discussed in Article XIII, as well as disputes regarding disciplinary penalties, "may be submitted to arbitration upon written request of either the Union or the Company...." Article XV(1). This dispute should then be re-

solved through the contractually provided method.

Finally, plaintiff asserts that he was not advised by union officials that the grievance procedure was mandatory. Statement of uncontested facts of James C. Harpp, November 1, 1982, Paragraph 12. He further states that his union representatives did not give him information regarding filing a grievance. Affidavit of Harpp, November 1, 1982, Paragraph 10. He states also that the employer did not "outline any procedure to contest" the dismissal. Affidavit of Harpp, November 1, 1982, Paragraph 9. Plaintiff has not alleged that the union wrongfully refused to process a grievance or that the company repudiated the contract. If either was the case, he would be free to bring a suit despite the grievance procedure mandate. *Vaca.* Nowhere in the affidavits, the pleadings, or the interrogatories, however, is there any indication that plaintiff alleges that the union breached its fair representation duty to him.

The circumstances of Harpp's case thus call for the application of the general rule requiring resort to the arbitral procedure. The Court fails to find in the contract any language which shows that "the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy." *Republic Steel,* 379 U.S. at 659, 85 S.Ct. at 619.

Accordingly, the Court finds that the plaintiff is precluded from suit until he has exhausted the arbitral procedure set forth in the collective bargaining agreement. As there are not material facts in dispute, *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980), defendant is entitled to summary judgment on this basis.

2. Statute of Limitations

■ The defendant's second motion for summary judgment brings before the Court a determination as to the applicable statute of limitations here. The defendant/movant asserts that the federal six-month period under the National Labor Relations Act (NLRA) is pertinent, while the plaintiff asserts that New York's six-year breach of contract statute of limitations is applicable. The Court finds that the proper time limitation is six months.

Harpp received a letter of termination on January 27, 1977. *See* Defendant's Exhibits D and E. Although Harpp had been absent from work beginning in December, 1976, the defendant and plaintiff agree that the cause of action accrued January 27, 1977. It is the defendant's position that Harpp should have begun his action within six months of this latter date, and the suit is therefore time barred because the summons was not served until December 28, 1977.

Defendant relies on the Second Circuit's recent decision in *Assad v. Mount Sinai Hospital,* 703 F.2d 36 (2d Cir.1983), in which the Court stated explicitly that a claim for wrongful discharge that has not been arbitrated must be brought within six months, the time limitation period set forth in Section 10(b) of the NLRA, 29 U.S.C. § 160(b) (1976). The *Assad* Court distinguished the situation present there from that in *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), in which a three-month period was found appropriate. *Mitchell* stands for the proposition that a grievance, once arbitrated, may only be brought to federal court, in New York, within the ninety-day time period for vacation of arbitration decisions.

In *Mitchell,* the employee had brought his claim through the grievance and arbitration machinery, whereas in *Assad,* as here, the employee had not arbitrated his claim before initiating his federal court action. (Harpp has not attempted to file a grievance, but Assad did begin the arbitration process.) The Supreme Court characterized the action in *Mitchell* as one to vacate an arbitration award and accordingly applied the three-month period provided under N.Y. C.P.L.R. § 7511(a).

In the *Assad* decision, the Second Circuit applied the six-month period provided under 29 U.S.C. § 160(b) because, although

the employee initiated the grievance process, the union apparently determined that the claim did not merit arbitration; thus, the employee "never enjoyed the advantages of formal arbitration." 703 F.2d at 41. Because the claim involved questions that needed resolution under federal labor law, i.e., whether the employer had breached the collective bargaining agreement and whether the union had breached its duty of fair representation, the state limitations period was not borrowed and the six-month federal statutory period was applied. Defendant G.E. argues the same six-month period applicable to Harpp's case, because the claim was not arbitrated.

The plaintiff, however, relies on *Abrams v. Carrier Corp.,* 434 F.2d 1234 (2d Cir.1970), in which the Second Circuit applied the state six-year limitations provided in N.Y.C. P.L.R. § 213(2) for actions for breach of contract. Under review in *Abrams* was a Section 301 suit for breach of the collective bargaining agreement and for breach of the union's duty of fair representation. The *Abrams* court cited as precedent *Auto Workers Union v. Hoosier Cardinal Corp.,* 383 U.S. 696, 705–708, 86 S.Ct. 1107, 1113– 1114, 16 L.Ed.2d 192 (1966). In *Hoosier,* on which Harpp also relies, the Supreme Court expressly rejected the federal six-month time limitation provided in 29 U.S.C. § 160(b) for a Section 301 claim, reasoning that Congress intended this limitation period to apply only to unfair labor practice proceedings. The Court stated that without clear Congressional direction requiring application of the six-month period to Section 301 suits, it was constrained to apply the relevant state statute of limitations, and could not "take the omission in the present statute as a license to judicially devise a uniform time limitation for § 301 suits." 383 U.S. at 704, 86 S.Ct. at 1112–13.

It appears, however, that *Hoosier* has been narrowed by the recent Supreme Court decision in *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), in which the Court held that where an employee sues both his employer under Section 301 for breach of a collective bargain-

ing agreement and his union for breach of its duty of fair representation, the six-month statute of limitations of 29 U.S.C. § 160(b) applies. The Court in *DelCostello* overruled *Flowers v. Local 2602 of United Steelworkers,* 671 F.2d 87 (2d Cir.1982), in which the Second Circuit borrowed what it considered to be the analogous state limitations period, New York's three-year malpractice time period under C.P.L.R. § 214(6) for actions against attorneys, for that part of the suit against the union.

*Hoosier* was an action brought by a union, not an employer, and an arbitration agreement was not at issue. For those reasons, the *Hoosier* facts were found analogous to those of an ordinary breach of contract action. *DelCostello,* 103 S.Ct. at 2289. The Supreme Court in *DelCostello* stated that the *Hoosier* decision "expressly reserved the question whether we would apply state law to § 301 actions where the analogy was less direct or the relevant policy factors different...." *Id.*

The Second Circuit in *Assad* also read the *Hoosier* decision to borrow the state time limitation narrowly, seeing it as "emphatically limited" to that precise factual situation, " 'an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law.' " *Assad,* 703 F.2d at 42, quoting *Hoosier,* 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7. The *Assad* court further reasoned that a federal court should not apply a state statute of limitations when that use would contravene national labor policy. *Assad,* 703 F.2d at 42–43, citing *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975).

As the *Assad* case concerned a matter that had not been fully arbitrated, the Second Circuit also declined to apply the *Mitchell* rule of borrowing the state statute applicable to vacation of arbitration agreements.

Plaintiff Harpp contends that the *Assad* decision is inapposite because while Assad was required to exhaust grievance and arbitration procedures before commencing suit, Harpp is of the opinion that he had the option of civil action or arbitration. As the Court has found that Harpp was mandated to follow the collective bargaining agreement's grievance and arbitration procedure, this argument is without merit. Accordingly, the six-month period is the pertinent one.

Once it is decided that the six-month period is appropriate for this Section 301 case, the question to be determined is whether the *Assad* and *DelCostello* findings should have retrospective effect. The Court finds that the six-month statute of limitations should be applied retrospectively to Harpp's case.

■ The general rule is that judicial decisions have retroactive as well as prospective effect. *Kremer v. Chemical Constr. Corp.,* 623 F.2d 786, 788–89 (2d Cir.1980). In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court articulated the following three-part test to employ to determine whether the particular factual setting justifies finding an exception to the rule favoring retroactivity. That test is as follows:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ..., or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron,* 404 U.S. at 106–107, 92 S.Ct. at 355. [Citations omitted.]

■ All three of the above factors must be satisfied, or the decision is applied retroactively. *Holzsager v. Valley Hospital,* 646 F.2d 792, 797–98 (2d Cir.1981). The party opposing its retroactive application bears the burden of demonstrating why the decision should not be applied. *Cash v. Califano,* 621 F.2d 626, 628 (4th Cir.1980). If the first prong of the test is not satisfied, the "balancing process" required by the second and third factors need not be pursued. *Kremer,* 623 F.2d at 788–89. *See also United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 (1982).

The first question then, is whether the decision reached in *Assad* and *DelCostello* constitute a clear break with past precedent in the Second Circuit and in the Supreme Court. Defendant/movant contends that the *Assad* decision does not represent such a clear break because the *Abrams* decision, in which the six-year period was found applicable, did not concern an employee who sued his employer before the matter was arbitrated. Plaintiff, at oral argument, opined that as *Abrams* was the past precedent in this Circuit, the recent decisions should not be applied to his case.

The Court finds that the *Assad* and *DelCostello* holdings do not represent "an avulsive change which caused the current of law thereafter to flow between new banks". *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 499, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968). In *Hoosier,* relied upon by the *Abrams* Court, the question was left open as to whether all § 301 suits would fall under the same rule. 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7. In *Mitchell,* the majority did not reach the question of whether § 10(b) was appropriate as the parties had not raised it. Furthermore, the result would have been the same as more than six months had elapsed. 451 U.S. at 60 n. 2, 101 S.Ct. at 1562–63 n. 2. As there was confusion in the law before the decisions were reached, it cannot be said that the application of the § 10(b) statute of limitations represents a radical change in

the rules governing timeliness. Therefore, the plaintiff has not met his burden under the first prong of the *Chevron* test.

Plaintiff has also not satisfied the second prong as application of the six-month period here enhances the federal interest in speedy resolution of labor disputes and promotes uniformity in § 301 suits. Weighing the third factor, whether injustice or hardship would be worked by imposing the time limit on Harpp, still results in a finding for retroactivity. As the law was unsettled, he could not have relied on the six-year time period.

This Court notes that the *Mitchell* court applied the statute of limitations without entering into the *Chevron* analysis. Similarly, in one of the two companion cases consolidated on appeal in the *DelCostello* case, the six-month period was applied without discussion of *Chevron.* In the second companion case, the petitioner raised the retroactivity question in a limited context which the court did not reach. *DelCostello,* 103 S.Ct. at 2287 n. 11. The petitioner there contended that if the particular state statute of limitations for vacation of arbitration was considered appropriate following *Mitchell,* instead of the federal statute, then the *Mitchell* decision should not be applied retroactively. *Id.* As the § 10(b) period was applied, the question was not considered.

Accordingly, the Court finds that the six-month period under § 10(b) is appropriate, and that operates to bar this plaintiff from suit.

Defendant's motions for summary judgment are hereby granted. The plaintiff's federal claims having here been disposed of the pendent state claim for breach of implied contract is also dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

IT IS SO ORDERED.