**Emma Dene JARNIGAN**

v.

**TEAMSTERS LOCAL 519 and Office of Professional Employees International Union Local No. 144.**

Civ. No. 3–82–238.

United States District Court,
E. D. Tennessee, N. D.

July 12, 1982.

W. P. Boone Dougherty, Knoxville, Tenn., for plaintiff.

Robert H. Watson, Jr., Knoxville, Tenn., Cecil D. Branstetter, Jr., Nashville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action by an employee union member for alleged breach of a collective bargaining agreement by her employer, Teamsters Local Union No. 519 (Local 519), and for the alleged breach of the duty of fair representation by her union, the Office and Professional Employees International Union, Local No. 144 (Local 144). Jurisdiction is invoked pursuant to 29 U.S.C. § 185. Following a non-jury trial, the Court makes the following findings of fact and conclusions of law.

Plaintiff was employed by Local 519 as an insurance clerk and secretary from November 27, 1976 until she was laid off on September 11, 1981. At that time, Local 519 employed only one other office employee, Patricia Witzel, who worked as secretary and bookkeeper. The other full time employees of Local 519 in September, 1981 were George Moir, president; Robert C. Barnes, Jr., secretary-treasurer; and Jimmy Metts, business agent.

Because of declining membership and the corresponding decline in dues, Local 519 suffered economic problems in 1981. In January, 1980, when Moir became president of Local 519, there were approximately 2,600 members in the Local. In January, 1981, 2,009 dues were received. In August, 1981, 1,944 dues were received. In May, 1982, the membership sank to 1,700. The Trustees Reports for 1981 show that Local 519 had negative cash flows in January, April, May and July. In August, 1981, in response to these pressures, Moir laid off Teddy L. Porter, a business agent. His lay off saved Local 519 $4,365.69 per month. On September 4, 1981, Moir notified plaintiff that she was being laid off effective September 11, 1981 and that she would be called back in the event of an "upturn in business." Her lay off saved the Local $2,305.65 per month. Even with these reductions in staff, Local 519 had negative cash flows in January and February, 1982.

After her lay off, plaintiff learned from Pat Witzel that Moir and Barnes were doing some of her work. On September 30, 1981, plaintiff filed a grievance with Local 144 charging that management was doing her work. Ms. Sandra Davis, president of Local 144, advised plaintiff that she should contact her employer prior to filing the grievance to ensure that all of the technical steps of the grievance process were completed. This was done and the same grievance was resubmitted on October 6, 1981. Plaintiff's grievance, which was submitted in her own handwriting, claimed that it was improper for management to be doing her work. Pursuant to the grievance process, Davis wrote Local 519 on October 1, 1981 notifying the employer that a grievance was filed pursuant to the contract. On October 9, 1981, Davis met with Moir and Barnes. She also talked with Pat Witzel, also a member of Local 144, concerning plaintiff's lay off from Local 519. On November 12, 1981, Davis wrote Local 519 demanding a reply to the earlier step in the grievance process. In a letter dated November 17, 1981, Moir notified Davis that the grievance was denied.

On November 25, 1981, the grievance committee of Local 144 met to discuss plaintiff's grievance. At this meeting, the grievance committee heard the plaintiff's position on the grievance and, at plaintiff's request, took no action. On November 30, 1981, three of the four members of the grievance committee met with Moir and Barnes. After the meeting, the grievance committee held a separate meeting and it was unanimously determined not to proceed with the grievance to arbitration. Notice of this decision was sent to plaintiff and Local 519 on December 2, 1981. Plaintiff filed this action on April 9, 1982.

Defendants argue that plaintiff's complaint was not filed within the applicable statute of limitations. Defendants, relying

on Justice Stewart's concurring opinion in *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), urge the Court to adopt the six-month limitations period of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). The majority in *Mitchell* held that an employee's action against his employer for discharge in violation of a collective bargaining agreement and actions for unfair representation by an employee against his union are to be governed by state statutes of limitations applicable to actions to vacate an arbitration award. Defendants correctly point out that Tennessee has no statute of limitations for actions to vacate arbitration awards. Plaintiff contends that Tennessee's six-year statute of limitations for breach of contract actions is the appropriate statute of limitations. Tenn.Code Ann. § 28–3–109(a)(3). The Court in *Mitchell* expressly rejected the use of state statutes of limitations for breach of contract.

■■ The Sixth Circuit has recently addressed this question under Michigan law. In *Badon v. General Motors Corp.,* 679 F.2d 93 (6th Cir. 1982), the Court adopted the six-month limitations period of § 10(b) since Michigan has no statute of limitations for actions to vacate arbitration awards. Following this reasoning, we adopt the § 10(b) limitation period since Tennessee has no appropriate statute of limitations. Having adopted the six-month statute of limitations, we are of the opinion that plaintiff's action is not time-barred. Plaintiff was placed on lay-off status effective September 11, 1981. She filed her grievance on September 30, 1981. On November 17, 1981, her employer notified the Union that her grievance was denied. Plaintiff instituted this action on April 9, 1982. Although more than six months elapsed between plaintiff's lay off and the filing of her complaint, the statute of limitations is tolled from the time the grievance was filed until it was rejected. *Smart v. Ellis Trucking Co., Inc.,* 580 F.2d 215, 219 (6th Cir. 1978), cert. denied, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). The action was, therefore, timely filed.

■ We now consider the merits of the case. Plaintiff seeks to hold Local 519 liable for a breach of the collective bargaining agreement on the theory that her lay off for economic reasons was a subterfuge. She contends that Moir actually discharged her without cause, which would be a violation of Article IX, Section 2 of the collective bargaining agreement. Plaintiff failed to carry her burden of proof on this issue. As noted above, Local 519 had economic problems in 1981 and continues to have economic problems. The lay offs of Porter and plaintiff have partially alleviated these problems. Mr. George Ross Clapp, former president of Local 519, testified that there were lay offs for economic reasons in the 1950's and in 1967 or 1968. Plaintiff was advised that she will be called back to work when business improves, and no proof was introduced to show that she will not. It is undisputed that no one has been hired since plaintiff's lay off to do her work. That Local 519 has replaced an automobile and increased the salaries of its remaining employees does not show that plaintiff was laid off for any reason other than that given by Local 519. We find that plaintiff was laid off for economic reasons. It is undisputed that plaintiff was given one week's notice of the lay off as required by Article IX, Section 1 of the collective bargaining agreement. We, therefore, conclude that Local 519 has not breached the collective bargaining agreement.

■ The issue as to the liability of Local 144 is to be determined according to the standard set forth in *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1966):

A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.

We conclude that Local 144 did not breach its duty of fair representation. Davis and the grievance committee processed plaintiff's grievance according to the grievance procedure and, after investigation, found that the grievance did not merit going

through arbitration. There was no evidence that Davis or any grievance committee member was personally hostile to plaintiff or that any officer of Local 144 acted at any time other than in good faith. No individual employee has an absolute right to have his or her grievance arbitrated. *Id.* at 195, 87 S.Ct. at 919.

Although it was not an issue in this case, plaintiff's counsel called some witnesses in an attempt to show that the officers of Local 519 were doing plaintiff's work. Counsel argued that for the officers to do plaintiff's work would be a violation of the collective bargaining agreement. Counsel based this contention on an alleged custom or practice existing when the collective bargaining agreement was negotiated. It was necessary for counsel to rely on a custom or practice since the collective bargaining agreement does not delineate the duties of management and management's employees. We mention this issue only to state that the witnesses did not support counsel's contention. We particularly note that Mr. Clapp, former president of Local 519, testified that officers and business agents of the Local have always done some of the work of the Local 144 employees. Therefore, even if we were to accept counsel's additional theory of liability as to Local 519, we would be constrained to hold there was no breach of the collective bargaining agreement.

For the reasons stated, it is ORDERED that judgment enter in favor of defendants Local 519 and Local 144. It is further ORDERED that this case be, and the same hereby is, dismissed.

Order Accordingly.