Calvin MALLORY, Plaintiff,

v.

INGERSOLL–RAND
COMPANY, Defendant.

Civ. A. No. 84–0203–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Nov. 12, 1985.

Charlie R. Jessee, Lebanon, Va., for plaintiff.

R.A. Vinyard, Abingdon, Va., and J. Alan Lips, Taft, Stettinius & Hollister, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Calvin Mallory, instituted this action in state court seeking relief for the alleged breach of contract by the defendant, Ingersoll-Rand Company. The contractual obligations at issue allegedly arose out of a collective-bargaining agreement between defendant and the International Union, United Mine Workers of America, Local No. 1737. Defendant timely petitioned this court for removal of the action, contending that the action arises under § 301 of the Labor Management Relations Act of 1947, and thus gives this court original jurisdiction. The action is now before the court on plaintiff's motion to remand to state court based on this court's alleged lack of subject matter jurisdiction and on defendant's motion to dismiss based on plaintiff's alleged failure to state a claim upon which relief can be granted.

### I.

Plaintiff's original complaint was filed on May 9, 1984 in the Circuit Court of Tazewell County, Virginia. As stated in count one of the complaint plaintiff was an employee of the defendant and as such was an intended beneficiary of a collective-bargaining agreement entered into on or about July 25, 1979 between defendant and plaintiff's union, Local 1737 of the United Mine Workers of America. (A copy of the agreement was attached to the complaint as plaintiff's exhibit # 1.). On or about October 19, 1979, however, plaintiff became permanently and totally disabled and was forced to terminate his active employment with defendant. He then alleges that pursuant to the terms of the agreement he was entitled to a fixed monthly sum in long-term disability benefits for the duration of his disability or until he reached retirement age or died, that subsequent to the termination of his employment with defendant he applied for such benefits through defendant's disability insurance carrier and that he received the fixed monthly sum from April 1, 1980 to April 11, 1981. In addition, plaintiff was approved for social security disability income benefits on or about April 1, 1980. On or about April 10, 1981, plaintiff goes on to allege, defendant's insurance carrier notified him that an overpayment of long-term benefits from April 12, 1980 to April 11, 1981 had been made "based on an alleged integration provision in the long-term disability insurance policy, which stated that long-term disability benefits will be reduced by disability income payable under any government plan as a result of disability." Consequently, plaintiff's long-term disability benefits were reduced by the amount he received in monthly social security disability benefits and he was "forced" to repay defendant's insurance carrier the amount of the stated overpayment. Plaintiff then alleges that these events constitute a breach of the collective-bargaining agreement by defendant. In count two of the complaint plaintiff alleges that pursuant to the terms of the agreement he was also entitled to a certain sum in monthly pension benefits, that he applied for such benefits and that defendant "unjustly withheld" these benefits from him on and after October 19, 1979. In count three of the complaint plaintiff further alleges that under the provisions of the agreement he was entitled to certain medical insurance coverage by defendant, but on or about November 10, 1982 defendant notified him that this insurance would be terminated effective December 1, 1982, constituting a breach of contract by defendant. Finally, in count four of the complaint plaintiff alleges that pursuant to the terms of the agreement he was entitled to life insurance coverage by defendant, however defendant had terminated and refused to reinstate this coverage, which also constitutes a breach of contract by defendant.

On June 1, 1984 defendant filed its petition for removal with this court followed twenty-six days later by its first motion to dismiss. In the petition for removal defendant contends that the action as one for breach of a collective-bargaining agreement arises under § 301 of the Labor

Management Relations Act, 29 U.S.C. § 185, and thus within the court's original jurisdiction. Defendant's contention in its first motion to dismiss is that plaintiff had failed to allege exhaustion of the grievance and arbitration procedure established by the collective-bargaining agreement and that, in addition, counts one and two of plaintiff's complaint were barred by the applicable Virginia statute of limitations.

On August 3, 1984 plaintiff filed an amended complaint. Under count one he adds to the allegations of his original complaint that it was on and after May 11, 1981 that defendant "failed and refused" to pay the long-term disability benefits to which he was allegedly entitled by reducing these benefits in the amount of his social security disability benefits. Under each of his four counts he also adds that he timely sought to resolve the respective alleged breaches of contract pursuant to the terms of the collective-bargaining agreement "regarding resolution of desputes," but that his union, Local 1737, "arbitrarily, discriminatorily, and in bad faith refused to process or otherwise handle [his] grievance against [d]efendant," which "constituted a breach of the [u]nion's duty of fair representation to [him]."

Subsequently, plaintiff and defendant filed their respective motions that are now before the court. In its motion to dismiss plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) defendant contends that all counts therein are time-barred, arguing in its supporting memorandum that while the amended complaint meets plaintiff's obligation to allege exhaustion of the contractual grievance procedures it renders squarely applicable the six month statute of limitations set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Plaintiff, on the other hand, contends in his motion to remand the action back to state court that § 301 does not confer original jurisdiction in a suit by an employee against his employer.

The parties have submitted both briefs in support of their respective motions and in opposition to the other's motion, so the case is now ripe for decision. The issues raised are (1) whether the action arises under § 301 of the Labor Management Relations Act, (2) if so, whether the action is governed by the six month statute of limitations under § 10(b) of the National Labor Relations Act and (3) if the six month limitations period is applicable, whether the statute was nevertheless tolled, rendering the action timely.

## II.

■ Section 301 of the LMRA states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). An action covered by § 301 is governed by federal substantive law, *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and as such is subject to removal to federal court under 28 U.S.C. § 1441, *Avco v. Aero Lodge*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). Moreover, it is well established that a suit brought by an individual employee against his employer for breach of a collective-bargaining agreement is among the class of cases that falls within the purview of § 301. *Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

■ In the present action plaintiff plainly alleges under each count of his amended complaint that defendant breached the collective-bargaining agreement of which he was an alleged beneficiary. Plaintiff nevertheless argues that this court "is

presented only with a private suit by an employee against his employer" such that the relationship of the parties to the agreement is not in issue, nor are the federal policies underlying § 301 involved. Plaintiff thus goes on to contend that the suit should be remanded to state court in order for him to pursue his action as a breach of contract action under state law. The Supreme Court, however, has made clear § 301's pre-emptive effect. In explaining its *Avco* decision in *Franchise Tax Board of California v. Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1982), for example, the Court states that in *Avco* it affirmed

> that the petitioner's action 'arose under' § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available only under state law. The necessary ground of decision was that the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

Just last term the Court reaffirmed this position in *Allis-Chalmers Corp. v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). As in the case at bar, the respondent/employee in *Lueck* brought an action in state court against his employer over his employer's handling of his disability claim, which was filed under a plan that was part of a collective-bargaining agreement between his employer and his union. The Wisconsin Supreme Court had held that the employee's suit did not arise under § 301 out of a violation of a labor contract, but rather constituted an independent tort claim of bad faith. *Id.* at ——, 105 S.Ct. at 1908. In reversing the state court, the *Lueck* Court explained that

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow

from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* at ——, 105 S.Ct. at 1911. The Court concluded:

> The right that Lueck asserts is rooted in contract, and the bad-faith claim he brings could have been pleaded as a contract claim under § 301. Unless federal law governs that claim, the meaning of the health and disability-benefit provisions of the labor agreement would be subject to varying interpretations, and the congressional goal of a unified federal body of labor-contract law would be subverted.
>
> ... We ... hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law [as where the plaintiff failed to make use of the grievance procedure established in the collective-bargaining agreement].

*Id.* at ——, ——, 105 S.Ct. at 1916. It is therefore clear in the present case that plaintiff's claim does arise under § 301, giving this court jurisdiction over the action.

■ Moving then to the second issue here presented, the court finds that the action is squarely within the six month statute of limitations of NLRA § 10(b) as provided in *DelCostello*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476. Although plaintiff does not name his union as a defendant in his amended complaint, he does allege, as previously stated, that the union acted in such an arbitrary and discriminatory way in refusing to process his grievance as to constitute a breach of the union's duty of fair representation. As the Court explained in *DelCostello*, where an employee brings suit against his employer for breach of a collective-bargaining agree-

ment but has not exhausted his grievance through the procedures provided in the agreement because his union has breached its duty of fair representation, the employee may bring suit against both the employer and the union.

Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. 'Yet the two claims are inextricably interdependent. "To prevail against either the company or the Union employee-plaintiffs must not only show that [the employer's alleged breach of contract] was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."' The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straight-forward breach-of-contract suit under § 301 ... but a hybrid § 301/fair representation claim, amounting to 'a direct challenge to "the private settlement of disputes under the collective-bargaining agreement."' (Citations omitted.).

*Id.* at 164, 165, 103 S.Ct. at 2290–2291. The Court then goes on to adopt the six month limitations period set out in NLRA § 10(b) for such actions, viewing this period more suitable than any alternative period under state law in light of the policies of federal labor law. *Id.* at 169–171, 103 S.Ct. at 2292–2294.

Plaintiff argues, however, that even if his action is governed by the six month limitations period the period was tolled to within six months from the time he filed his original complaint in state court. In making this argument, plaintiff relies on *Jarnigan v. Teamsters Local 519*, 548 F.Supp. 25 (E.D.Tenn.1982), in which the court held in a § 301 action that the § 10(b) limitation period was tolled from the time the plaintiff/employee filed her grievance pursuant

to the collective-bargaining agreement procedure until her grievance was rejected by her employer. From this holding plaintiff deduces that the statute of limitations never began to run on his breach of contract action since defendant never filed a final rejection or settlement of his grievances and never informed him, he goes on to argue, that his grievances were not being processed. But the very fact that the plaintiff's grievance in *Jarnigan* was processed, at least initially, under the established grievance procedure is why the court there deemed the statute tolled as long as the process continued and why the case is inapplicable to the case at bar, where plaintiff alleges that his union refused to even take his grievances to his employer.

The basis of plaintiff's tolling argument was rejected in *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299 (7th Cir.1983). There a discharged employee brought a hybrid § 301/breach of fair representation action for her alleged wrongful discharge. Although her action was brought some eighteen months after the alleged contract violation, she contended that the statute of limitations did not bar her claim because the union refused to process her grievance and did not inform her as to the status of her request for her grievance to be filed. In rejecting plaintiff's contention that her action was timely, the *Metz* court stated:

... Both parties note the general rule that the limitations period begins to run 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.' *Hungerford v. United States*, 307 F.2d 99, 102 (9th Cir. 1962).... This case falls within the 'should have discovered prong' of the *Hungerford* rule. At some point prior to six months preceding the time this action was brought, the appellant, in the exercise of reasonable diligence, should have discovered the acts constituting the alleged violation.

715 at 304. The court goes on to explain that following her discharge on January 15, 1981 plaintiff notified her union, but the

union failed to file a grievance within the five-day limitation under the collective-bargaining agreement. Furthermore, the evidence was uncontested that the union took no action at all from May 5, 1981 until June 23, 1982 when the action was brought, resulting in almost seven months of union inactivity preceding the six month statutory period. The court thus concluded:

> At some point prior to the six month statutory period, the appellant should have realized that the union was taking no action on her behalf. The appellant cannot be allowed to sit back and claim a lack of notice in light of circumstances such as these.

*Id.*

■ Based on the *Metz* decision, this court is of the opinion that the present plaintiff's action is likewise time-barred. Plaintiff's amended complaint clearly shows that some eighteen to thirty-six months passed between the time of the alleged breaches of contract by defendant under counts one through four and the time he filed this action.[1] Under the terms of the grievance precedure involved, all parties concerned were under a duty to settle plaintiff's grievances "at the earliest practicable time." (Plaintiff's amended complaint, exhibit #1, 5). Since plaintiff sought his union's assistance in processing his claim, he should have realized at some point during the twelve to thirty month period prior to the six month period preceding the commencement of this suit that the union was taking no action in his behalf when it failed to initiate a meeting between union committeemen and management as required under step 1b of the procedure.[2] Plaintiff does not allege that he was misled by his union as to its position concerning his grievances, but rather that it simply refused, in bad faith, to "process or otherwise handle" them. Even if the union did not notify plaintiff of its decision not to follow up on his claims, as the *Metz* court stated:

> To say ... that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to eliminate.

715 F.2d at 304. Thus, under the circumstances here presented, the court is constrained to conclude that plaintiff's action is barred by the six month statute of limitations of NLRA § 10(b).

### III.

In conclusion, based on the reasons set forth above, the court denies plaintiff's motion to remand this action back to state court and hereby grants defendant's motion to dismiss plaintiff's action for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

---

1. In count four plaintiff alleges that his life insurance coverage was terminated but fails to specify the date of its termination. Because the collective-bargaining agreement incorporating the terms here at issue expired July 25, 1982, the termination of plaintiff's life insurance could have occurred no later than that date, some twenty-two months prior to the filing of this action.

2. Step 1b provides:

> *Between the aggrieved party, union representation, and plant management.* If the grievance is not adjusted to the grievant's satisfaction by his foreman, a request shall be given to the appropriate superintendent requesting a meeting. Management shall give a decision to the Union Committeemen who presented the grievance within two (2) working days after a fact finding meeting of Union and Company representatives.