**Calvin K.R. McCOY, Plaintiff,**

v.

**HESS OIL OF THE VIRGIN ISLANDS CORPORATION and United Steelworkers of America, District 35, Defendants.**

**Civ. No. 1995–132.**

District Court, Virgin Islands, D. St. Croix.

June 14, 2002.

---

Ronald Russell, St. Croix, U.S.V.I., for plaintiff.

C. Beth Moss, St. Croix, U.S.V.I., for defendant Hess Oil V.I. Corp.

Glen Connor, Birmingham, AL, for defendant United Steelworkers, District 35.

## MEMORANDUM

MOORE, District Judge.

### Background

On October 28, 1994, Calvin McCoy ["McCoy" or "plaintiff"] was discharged from employment at Hess Oil of the Virgin Islands Corporation ["HOVIC"]. According to HOVIC, McCoy, a black man, loudly and repeatedly referred to himself as a "nigger" after he had been warned not to use the term by his supervisor. Having failed to heed the instruction, McCoy was discharged for insubordination. McCoy grieved the discharge to his union, the United Steelworkers of America, District 35 ["Union"]. The local Union president, Gerard Jackson, investigated the grievance and discovered that McCoy had in fact been warned not to use the term, but continued to do so despite the warning. Jackson further discovered that McCoy had been twice disciplined for insubordination in the months before this particular incident.

The Union nevertheless processed the grievance through the grievance procedure, and finally appealed the discharge to arbitration. At arbitration, the Union took the position that an employee's use of a racial epithet in reference to himself, as opposed to others, was not a dischargeable offense. The Union also argued that there was no evidence that McCoy was instructed to cease referring to himself in that manner. Finally, the Union argued that termination was too severe a penalty for the infraction, and requested a modification of the penalty to something short of discharge.

The arbitrator found that McCoy was insubordinate. (*See* Union's Mot. Summ. J., Ex. M., at 3.) According to the arbitrator, the evidence established that McCoy had been directly ordered to stop using the term in reference to himself after he had called himself a "nigger" in the presence of another employee. In addition, other employees had complained to management about his statements. The arbitrator fur-

ther found that McCoy had arrived at work that day with a "confrontational attitude." Although insubordination is grounds for discharge under the collective bargaining agreement between HOVIC and the Union, the arbitrator agreed with the Union that this particular event was not sufficiently egregious, standing alone, to warrant termination. The arbitrator upheld the discharge, however, in light of McCoy's two previous suspensions for insubordination. The arbitrator rejected the Union's argument that he should not consider these other suspensions because they were still in the grievance process and "not final."

McCoy then filed this suit alleging that the Union breached its duty of fair representation and HOVIC breached the CBA. HOVIC and the Union ["defendants"] move for summary judgment.

### Discussion

In order to prevail in a "hybrid" section 301/breach of the duty of fair representation case such as this, the plaintiff must prove *both* that the employer breached the collective bargaining agreement *and* that the Union breached its duty to fairly represent the employee in the grievance to arbitration process. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) ("[T]he two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" (quoting *United Parcel Service v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 67 L.Ed.2d 732, (1981))); *Harrigan v. Caneel Bay, Inc.*, 745 F.Supp. 1122, 1127 (D.Vi.1990).

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see International Union, United Auto., Aerospace & Agr. Implement Workers of America, UAW, Local No. 1697 v. Skinner Engine Co.*, 188 F.3d 130, 137 (3d Cir.1999). To raise a genuine issue of material fact, "the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant, but simply must exceed the 'mere scintilla' standard." *Id.* (quoting *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir.1993)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

Once the moving party has presented its evidence to establish the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, if the nonmovant's evidence in opposition is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505; *see also Harrigan*, 745 F.Supp. at 1126.

### A. Breach of the Collective Bargaining Agreement

█ HOVIC asserts that it did not breach the collective bargaining agreement with the Union because McCoy was terminated "for cause," namely, insubordination,

which is a dischargeable offense under the CBA. In opposition, McCoy argues that the supervisor involved in the incident and who recommended that McCoy be suspended and/or terminated for allegedly refusing to follow a direct order was a "racist" and a "bully" who was "out to get" McCoy. In short, McCoy argues that the discharge for insubordination was just a racist supervisor's pretext to get rid of McCoy, which would mean that the discharge was not "for cause."

McCoy has submitted no evidence that could support this contention. At best, the evidence presented from other employees and ex-employees, taken in the light most favorable to the plaintiff, might suggest that the supervisor had a general reputation for being racist and "difficult" to work with. The plaintiff offers no evidence, other than these vague impressions of coworkers, that would tend to show that the supervisor specifically pushed for McCoy's termination because McCoy was black, because he had a personal dislike for McCoy, or because McCoy had "spoken out" about earlier conflicts between them. Instead, the evidence establishes that McCoy engaged in conduct that amounted to a refusal to follow a reasonable order. Under the terms of the governing collective bargaining agreement, this is insubordination, a dischargeable offense. Accordingly, I conclude that there is no genuine issue of material fact with respect to the alleged breach of the collective bargaining agreement and that, as a result, HOVIC is entitled to judgment as a matter of law.

## B. Breach of the Duty of Fair Representation

Even assuming for the sake of argument that McCoy has presented evidence to show that there exists a genuine issue of material fact with respect to the supervisor's real motive for recommending disciplinary action against McCoy, and further produced sufficient evidence that a reasonable person could find in his favor in that regard, he must also show that there is a triable issue regarding the Union's duty of fair representation. In such case, the focus is on "whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

According to McCoy, the Union failed to properly investigate his discharge grievance, only presented one witness on his behalf at the arbitration, and "generally gave up on McCoy." Further, the Union failed to interview McCoy's coworkers, who allegedly could have testified about a "discriminatory" company policy with respect to providing calculators to employees.[1] In order for a jury to find that the

---

1. McCoy's refusal to complete an "optimization form" that required him to perform certain calculations had been the cause of his previous suspensions for insubordination. According to McCoy, these calculator-related suspensions were wrong, fatally undermining the "progressive discipline" factor behind his ultimate discharge. If these previous suspensions were wrong, the reasoning goes, then McCoy's last incident of insubordination involving the racial epithet would not have been sufficient to warrant termination under the progressive discipline policy. McCoy even goes so far as to boldly declare that these calculator suspensions were resolved in his favor after the discharge was upheld by the arbitrator (who relied on those suspensions in assessing the penalty). This is simply not true. One grievance was deemed by the arbitrator as moot because he had already been discharged, and the other was settled by HOVIC. In fact, both suspensions were ultimately settled, with the letter of settlement specifically stating that the money settlement would not change the fact that he had been terminated.

Union failed to fairly represent McCoy during the arbitration proceeding, McCoy must present evidence showing that the Union acted in a manner arbitrary, discriminatory, or in bad faith. *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. at 67, 111 S.Ct. 1127 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)).

The Union contends that it is entitled to summary judgment because there is no evidence whatsoever that it acted in any manner other than eminently reasonable in light of McCoy's circumstances. In opposition, the plaintiff does not argue that the Union acted arbitrarily, discriminatorily, or in bad faith. Instead, he argues that the Union conducted a "perfunctory" investigation and was "derelict" in not bringing witnesses to testify at the arbitration hearing who could testify to the real reason for McCoy's termination. He also offers evidence in an effort to show that some of McCoy's coworkers had used the same offensive term, but either had not been discharged or did not find the term offensive. McCoy further argues that the Union should have presented this evidence to the arbitrator, and that the Union's overall "dereliction" was "detrimental" to the plaintiff's prosecution of his grievance.

Although a union's failure to investigate and uncover the "true facts" might well establish a breach of the duty of fair representation, there can be no breach of the duty of representation absent a showing that the true and complete facts would have compelled a different result. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 568, 96 S.Ct. 1048. As already noted, McCoy offers no colorable evidence of what he thinks was the "real reason" for his discharge. Moreover, there is ample evidence that the Union acted well within the "wide range of reasonableness" in its representation of McCoy. It was reasonable for the Union to pursue the discharge grievance first, as it was most urgent of the three in terms of McCoy's job and income. The evidence establishes that Mr. Joseph, the Union representative, considered the other two grievances involving McCoy's refusal to use a calculator and determined that pursuing those grievances first would not be fruitful. This was a considered decision, not in the least irrational. Mr. Joseph did believe, however, that there was a strong possibility that an arbitrator would find that calling oneself a racial epithet was not a terminable offense. At least in this regard, the Union achieved a certain amount of success at the arbitration.

As set forth above, the arbitrator agreed with McCoy that the incident was not sufficient, *standing alone,* to warrant discharge, even though insubordination is a dischargeable offense. It is very clear, however, that the arbitrator considered, *and rejected,* the proposition (whether raised by the Union or not) that it was an unreasonable request to order McCoy to

---

Even if these grievances had not been settled, the evidence (viewed in the light most favorable to the plaintiff) establishes that McCoy could have performed the calculations without a calculator and that he simply chose not to do them at all. There is also evidence

that a fellow employee offered the use of his calculator, but McCoy refused. McCoy does not dispute this fact; indeed, his testimony supports it. In any event, these other grievances and arbitrations are not materially relevant to this hybrid action.

refrain from using a racial epithet in reference to himself, concluding instead that HOVIC had every right to order an employee to stop using the term in the presence of others in the workplace. That the Union did not succeed in its argument does not mean that it failed to fairly represent the plaintiff.

Given the high level of deference that the Court is to accord the Union's performance, I easily conclude that the plaintiff's claim of breach of duty of fair representation is without merit. The plaintiff has offered nothing but unsupported speculation regarding the "true" reason for his discharge. As a result, the plaintiff has failed to establish a genuine issue of material fact, and the Union is entitled to judgment as a matter of law.

### Post–Hearing Motion to File a Supplemental Memorandum

After the parties had fully briefed this motion, and after a hearing held on April 9, 2002, the plaintiff moved for leave to file a supplemental memorandum. Both HOVIC and the Union have opposed the motion, the Union having also moved to strike the proffered memorandum. In essence, the plaintiff cites cases previously uncited to the Court and would also supplement his references to evidence against the Union by pointing to his responses to HOVIC's first set of interrogatories. There, he states that the Union never contacted him and did not present his testimony to the arbitrator. Even if I were to grant the plaintiff's motion for leave to supplement his memorandum at this exceedingly late stage of the summary judgment proceedings (which I am not inclined to do), his case would not be saved. In the first place, nothing in the supplemental memorandum or exhibits thereto alters my conclusion that the Union adequately represented the plaintiff in the arbitration proceedings. If anything, the exhibits only further demonstrate McCoy's deliberate, intentional, and provocative refusal to follow a supervisor's order to stop saying "nigger" in the presence of other employees. (*See* Submission of Exs., Docket No. 116, "Termination Memorandum" ("Throughout the meeting with you [McCoy] in the foreman's office, you continued to use this racial epithet in reference to yourself, insisting that's what you are."); *id.* "Mr. McCoy's Account" (not materially disputing that account).) [2]

### Conclusion

There is no issue of genuine material fact regarding HOVIC's alleged breach of the collective bargaining agreement. Likewise, there is no genuine issue of material fact regarding the Union's alleged failure to fairly represent McCoy during the grievance and arbitration process. Both defendants are entitled to summary judgment. As a result, this hybrid action against them will be dismissed.

### ORDER

For the reasons stated in the accompanying Memorandum of even date, it is hereby

---

**2.** In any event, in order to prevail ultimately at trial in this action, McCoy must establish both a breach of the CBA and the Union's breach of the duty of fair representation. As already stated, the evidence establishes that insubordination is grounds for discharge under the CBA, and that McCoy was insubordinate when he continued to call himself "nigger" in the presence of other employees after he had been specifically ordered to stop. I cannot, therefore, find that HOVIC breached the CBA. McCoy presents no evidence, either in his original pleadings or in his supplemental memorandum, that could possibly be viewed as establishing anything different.

**ORDERED** that the defendants' motion for summary judgment (Docket No. 99) is **GRANTED.** It is further

**ORDERED** that the plaintiff's motion for leave to file a post-hearing supplemental memorandum (Docket No. 118), and defendant HOVIC's motion to strike the memorandum as filed (Docket No. 117) are **DENIED AS MOOT.** This case is **DISMISSED.**